IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

FRANCISCA D. LOCICERO, an individual,
on behalf of herself and all others similarly
situated,

      Plaintiff,

vs.                                         **CLASS ACTION**

INTRUST BANK, N.A., a national banking
association, and GREENSKY, LLC, a Georgia
limited liability company,

      Defendants.
_____/

**COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF**

Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others similarly situated, sues Defendants, INTRUST Bank, N.A., a national banking association, and GreenSky, LLC, a Georgia limited liability company, and alleges:

**GENERAL ALLEGATIONS**

**I.  JURISDICTION**

1. The jurisdiction of this court is established pursuant to Federal Truth in Finding Act, 15 U.S.C. §1640 ("TILA") and for state law claims pursuant to the pendent jurisdiction of the Court.

**II.  ALLEGATIONS AS TO THE PARTIES**

2. At all times material hereto, Plaintiff, Francisca D. Locicero ("Ms. Locicero"), is *sui juris* and resident of Broward County, Florida.

1

3.At all times material hereto, Defendant, INTRUST Bank ("INTRUST"), is a banking corporation organized in the State of Kansas.

4.At all times material hereto, INTRUST was in the business of extending credit to consumers for personal and household purposes.

5.At all times material hereto, GreenSky, LLC ("GreenSky") was a Georgia limited liability company doing business in the State of Florida.

## III.  FACTUAL ALLEGATIONS

### A.  Details of In-home Solicitation

#### 1. Deceptive Sales Practices of Home Improvement Contractor

*a. General*

6.At all times material hereto, Ms. Locicero was the legal title owner of a single-family home located at 1050 N.W. 53rd Street, Pompano Beach, Florida 33064 ("Locicero Residence"), where Ms. Locicero maintained her place of residence.

7.On or about July 24, 2016, Ms. Locicero received an unsolicited telephone call on her cell phone from whom Ms. Locicero believes was a salesperson at "Fluid Air Concepts" ("Fluid Air" or "A/C Contractor") concerning a "sales program" to help low income persons save on energy costs.

8.In the ensuing telephone call, the salesperson informed Ms. Locicero that Ms. Locicero could save a substantial amount of money by upgrading the air conditioning system at the Locicero Residence using a Florida Power and Light ("FPL") Program "that would pay for itself."

9.In the belief that there was some sort of "FPL Program" to help low income persons like herself, Ms. Locicero agreed to meet with a sales person of Fluid Air at her home.

2

10. Several days later, on or about July 28, 2016, an employee and/or agent of Fluid Air who identified herself as "Michelle" arrived at the Locicero Residence for the purpose of "inspecting" the air conditioner unit and discussing the so-called "FPL Program."

11. After "inspecting" the air conditioner unit at the Locicero Residence, "Michelle" falsely represented to Ms. Locicero that the "FPL Program" provided financial assistance to homeowners such as Ms. Locicero to change out old air conditioner units for energy efficiency when no such "FPL Program" existed.

12. "Michelle" falsely represented to Ms. Locicero that the "FPL Program" would allow Ms. Locicero to change-out the air conditioner replacement at the Locicero Residence without Ms. Locicero paying any money out of pocket when in fact it was the intent of Fluid Air to create a loan in the name of Ms. Locicero to finance the purchase of the air conditioner replacement without her permission or consent.

13. In the belief that an "FPL Program" existed which would assist Ms. Locicero in changing out her air conditioner unit, Ms. Locicero signed a document entitled "Agreement for Change Out in Service" ("A/C Change Out Agreement").

14. A true and correct copy of the A/C Change Out Agreement is attached hereto and incorporated herein by reference as Exhibit "A."

15. Within forty-eight (48) hours of Ms. Locicero signing the A/C Change Out Agreement, on Saturday, July 30, 2016, Fluid Air replaced the air conditioner unit with a new unit ("A/C Unit") at the Locicero Residence without obtaining a permit and without complying with applicable code requirements, including *inter alia* anchoring the A/C Unit to the slab of the Locicero Residence.

### b. Non-Compliance with "Cool-Down" Statutes

#### i. As to the Florida Home Solicitation Act

16. As more particularly described above, the sale of the A/C Unit constituted a "home solicitation sale" as said term is defined under Florida Statute §501.021(1).

17. Pursuant to Florida Statute §501.031(2), every home solicitation sale should be evidenced by a writing which contains a statement ("Right to Cancel") under a conspicuous caption, "BUYER'S RIGHT TO CANCEL":

> "This is a home solicitation sale, and if you do not want the goods or services, you may cancel this agreement by providing written notice to the seller in person, by telegram, or by mail. This notice must indicate that you do not want the goods or services and must be delivered or postmarked before midnight of the third business day after you sign this agreement. If you cancel this agreement, the seller may not keep all or part of any cash down payment."

18. The A/Change Out Agreement did not have the statutorily mandated disclosures with respect to both form and content of the Right to Cancel in contravention of Florida Statute §501.031.

#### ii. As to the Federal Cooling-Off Rule

19. As more particularly described above, the sale of the A/C Unit was a "door-to-door sale" as said term is defined under 16 C.F.R. §429.0(a).

20. As more particularly described above, the A/C Unit constituted a "consumer good" as said term is defined under 16 C.F.R. §429.0(b).

21. As more particularly described above, Fluid Air was a "seller" as said term is defined under 16 C.F.R. §429.0(c).

22. 16 C.F.R. §429.1 provides in pertinent part that it is an unfair and deceptive act or practice for any seller to:

> (a) Fail to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language, e.g., Spanish, as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of 10 points, a statement in substantially the following form:
>
> "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."
>
> The seller may select the method of providing the buyer with the duplicate notice of cancellation form set forth in paragraph (b) of this section, provided however, that in the event of cancellation the buyer must be able to retain a complete copy of the contract or receipt. Furthermore, if both forms are not attached to the contract or receipt, the seller is required to alter the last sentence in the statement above to conform to the actual location of the forms.
>
> (b) Fail to furnish each buyer, at the time the buyer signs the door-to-door sales contract or otherwise agrees to buy consumer goods or services from the seller, a completed form in duplicate, captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," which shall (where applicable) contain in ten point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract.
>
> Notice of Cancellation
>
> [enter date of transaction]
> ………………………………………………………………………
> (Date)

> You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.
>
> If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.
>
> If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.
>
> If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.
>
> To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to [Name of seller], at [address of seller's place of business] NOT LATER THAN MIDNIGHT OF [date].
>
> I HEREBY CANCEL THIS TRANSACTION.
>
> (Date)……………………………………………………………
>
> (Buyer's signature)…………………………………………………

23. As more particularly described above, Fluid Air failed to provide the required disclosure of the right to cancel in the form and with the content mandated under 16 C.F.R. §429.1(a).

24. As more particularly described above, Fluid Air failed to provide Ms. Locicero as

6

a buyer the mandated "Notice of Right to Cancel" or "Notice of Cancellation" mandated by 16 C.F.R. §429.1(b).

25. Fluid Air failed to furnish copies of the "Notice of Cancellation" to Ms. Locicero as a buyer in the manner mandated by 16 C.F.R. §429.1(c).

26. As more particularly described above, Fluid Air has engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute §501.204(1).

27. A violation of the Cooling-Off Rule and the Florida Home Solicitation Act by Fluid Air is a *per se* violation of the Florida Deceptive and Unfair Trade Practices Act pursuant to Florida Statute §§501.203(3)(a), (b) and (c).

### B.  Deceptive Financing Practices of GreenSky

#### *1. Unauthorized Loan Created by GreenSky*

28. Several days after the installation of the air conditioner unit at the Locicero Residence, Ms. Locicero received a letter from GreenSky informing Ms. Locicero that Ms. Locicero had a loan agreement for Eight Thousand Dollars ($8,000.00).

29. A true copy of the transmittal letter from GreenSky with the Loan Agreement, is attached hereto and incorporated herein by reference as Composite Exhibit "B."

30. Through the transmittal letter, GreenSky provided Ms. Locicero a document entitled "GreenSky Installment Loan Agreement" ("Locicero Loan Agreement").

31. A true copy of the Locicero Loan Agreement is attached hereto and incorporated herein by reference as Exhibit "C."

32. Pursuant to the Locicero Loan Agreement, INTRUST purportedly extended credit to Ms. Locicero in the amount of Eight Thousand Dollars ($8,000.00).

33. Pursuant to the Locicero Loan Agreement, INTRUST represented the following with respect to the terms for the extension of credit:

| | ANNUAL PERCENTAGE RATE<br>The cost of credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid when you have made all payments as scheduled |
|---|---|---|---|---|
| TRUTH IN LENDING DISCLOSURE | 7.99% | $ 3,741.05 (e) | $ 8,000.00 (e) | $ 11,741.05 (e) |
| | Your payment schedule will be: | | | |
| | Number of Payments | Amount of Payments | When Payments are Due | |
| | 5 | $ 53.27 (e) | Beginning 09/10/2016 and monthly thereafter for a total of 5 Months ("Promotional Payment Period") | |
| | 114 | $ 99.78 (e) | Beginning monthly thereafter for a total of 114 months | |
| | 1 | $ 99.78 (e) | 08/10/2026 | |
| | Late Charge: If payment is more than 10 days late, you will be charged the lesser of $25 ($15 in Iowa) or 5% of the payment amount past due. | | | |
| | Prepayment: If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge. See the rest of this document for any additional information for nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.<br>"(e)" means estimate | | | |

("TILA Disclosure").

34. As part of the TILA Disclosure, INTRUST represented as the "Itemization of Amount Financed" that Eight Thousand Dollars ($8,000.00) was paid to Fluid Air ("Itemization of Amount Financed Disclosure").

35. The Itemization of Amount Financed Disclosure was materially false insofar as Eight Thousand Dollars ($8,000.00) was not in fact paid to Fluid Air. Rather, GreenSky as opposed to Fluid Air received the loan proceeds in whole or in part and only a portion of same was actually paid to the contractor, Fluid Air.

36. The Itemization of Amount Financed Disclosure included an undisclosed fee paid to GreenSky for arranging for the credit represented by the Locicero Loan Agreement.

37. The Itemization of Amount Financed Disclosures in the finance agreements of class members falsely represent that the full amount financed was paid to third parties when in fact the "amount financed" was paid to GreenSky.

38. As a result of its relationship with GreenSky, INTRUST has created hundreds if not thousands of loans similar to the Locicero Loan Agreement without providing the disclosures mandated by the TILA prior to consummation of the transaction to finance home improvements.

### 2. *Details of Florida Credit Service Organization Act ("CSOA") Non-Compliance by GreenSky*

39. Pursuant to Florida Statute §817.7001, a "credit service organization" means any person who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can or will sell, provide, or perform, in return of the payment of money or other valuable consideration any of the following services:

   1. Improving the buyer's credit record, history or ratings;

   2. Obtaining an extension of credit for a buyer; or

   3. Providing advice or assistance to a buyer with regard to services described in either subparagraph 1. or subparagraph 2. above.

40. Pursuant to Florida Statute §817.7001(3), an "extension of credit" as related to a credit service organization "means the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes."

41. As detailed above, GreenSky acted as a credit service organization in its actions with Ms. Locicero as described above.

42. Pursuant to Florida Statute §817.7005(1), a credit service organization shall not charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit service organization has agreed to perform for the buyer, unless the credit service organization has obtained a surety bond of $10,000 issued by a surety company admitted to do business in this state and has established a trust account at a federally insured bank or savings and loan association located in this state.

9

43. By information and belief, GreenSky did not obtain a surety bond or establish a trust account as mandated by Florida Statute §817.7005(1) prior to providing the services of a credit service organization to Ms. Locicero and other persons similarly situated.

44. Pursuant to Florida Statute §817.702, a credit service organization must also give a consumer to whom it is providing services, a written statement which will detail the services provided, their right to certain required information for the consumer, and the total fees to be charged to the consumers before the credit service organization actually performs any services on the consumer's behalf.

45. GreenSky did not provide the written statement to Ms. Locicero required by Florida Statute §817.702.

46. Pursuant to Florida Statute §817.704(2), a credit service organization must also provide a consumer written right to cancel the contract for credit services that it establishes with a consumer in a specific form.

47. GreenSky did not provide Ms. Locicero with the required right to cancel as required under Florida Statute §817.704(2).

48. The actions described above by GreenSky were willful and knowing. GreenSky is a sophisticated, nationwide business which has knowledge of the various state laws that govern credit services.

49. Pursuant to Florida Statute §817.706, a credit service organization which willfully fails to comply with the requirements of the CSOA is liable for actual damages, including all amounts paid to the credit service organization, together with reasonable attorney's fees, costs and punitive damages.

50. During the applicable statute of limitations, GreenSky has acted as a credit service organization for hundreds if not thousands of Florida consumers such as Ms. Locicero without GreenSky complying with the requirements of the CSOA.

51. During the applicable statute of limitations, Greensky has collected hundreds if not thousands of dollars in unlawful fees from Florida consumers without complying with the requirements of the CSOA.

### 3. *Derivative Liability for INTRUST for Misconduct of Sellers*

52. Paragraph 23 of the Locicero Loan Agreement provides:

> NOTICES:  ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

53. Pursuant to 16 C.F.R. §433, known more commonly as "federal trade commission rule regarding the preservation of consumer claims and defenses" or "FTC holder rule," INTRUST is subject to all claims and defenses of Ms. Locicero and the other members of the class as consumers which are available against the credit sellers, to wit:  Fluid Air and GreenSky.

### IV.   CLASS ACTION ALLEGATIONS

54. Ms. Locicero brings this action on her own behalf and as representative of all those similarly situated pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, with respect to equitable relief sought herein, and Rule 23(b)(3), Federal Rules of Civil Procedure, with respect to the damages sought herein.

55. This action is brought on behalf of all persons who: (1) obtained an extension of

credit through GreenSky represented by a contract the same or substantially similar to the Locicero Loan Agreement, and (2) were not provided disclosures by INTRUST which were required under the TILA and Regulation Z in the form or substantially similar form as the TILA Disclosure.

56.     Although the precise number of class members is presently unknown and can only be determined by discovery, the proposed class size satisfied the requirements of Rule 23(a)(1), Federal Rules of Civil Procedure, as, upon information and belief, INTRUST has extended credit to more than one hundred (100) customers who executed all similar finance agreements.

57.     The members of the class referred to above who are similarly situated with Ms. Locicero, or readily ascertainable are so numerous that joinder of all members is impractical. There is a well-defined community of interest in the questions of law and fact involved, affecting the parties to be represented in that each party has been injured by, or has an interest in litigating the legality of the practice of the Defendant alleged herein.  Proof of a common or single state of fact or set of facts will establish the right of each member of the class to recover.

58.     Plaintiff is a member of the class because Plaintiff entered into the Locicero Loan Agreement that was obtained by GreenSky for which INTRUST failed to provide adequate disclosures under TILA and Regulation Z in the same manner as all other members of the class.

59.     The claim of Plaintiff raises common questions of law or fact common to the questions of law or fact raised by the claims of the individual class members in this action within the meaning of Rule 23(a)(2), Federal Rules of Civil Procedure.  The questions of law or fact of Plaintiff arise out of a common practice in the manner in which Defendants have dealt with Plaintiff and class members, and predominate over any facts that may affect only individual class members within the meaning of Rule 23(b)(3), Federal Rules of Civil Procedure.

60.     Common questions of law or fact include whether Defendants provided an extension of credit in the form of the Locicero Loan Agreement in violation of TILA and Regulation Z which extension of credit was arranged by GreenSky in violation of the CSOA.

61.     The requirement of Rule 23(a)(3), Federal Rules of Civil Procedure, is met because the claims of Plaintiff are typical of the claims of class members.  Plaintiff and class members executed a finance agreement in the same or substantially similar form as the Locicero Loan Agreement which credit was obtained by GreenSky during the relevant class period and are entitled to statutory and actual damages as a result of the failure to disclose and provide the required material information under TILA and the CSOA.

62.     The requirement of Rule 23(a)(4), Federal Rules of Civil Procedure, is met because Plaintiff will fairly and accurately protect the interests of the class.  No antagonism exists between the interest of the Plaintiff and the interest of other class members. Counsel for Plaintiff is experienced in class action litigation and is well qualified to conduct this litigation.

63.     This action is appropriate for class treatment pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, because Defendant has acted or has refused to act on grounds generally applicable to the entire class, thereby making appropriate final and injunctive or corresponding to declaratory relief with respect to the class as a whole.

64.     A class action is superior to other methods for the fair and efficient adjudication of this controversy within the meaning of Rule 23(b)(3), Federal Rules of Civil Procedure, because among other things, it is able to concentrate the litigation of the class members' claims in one form, since it will conserve party and judicial resources and facilitate the consistency of adjudications.  Furthermore, as the damages suffered by individual class members in each class be relatively small, their interest in maintaining separate actions is questionable and the expense

and burden of individual litigation makes it impractical for them to seek individual redress for the wrongs done to them.  Additionally, the prosecution of separate claims by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against Defendant.  Plaintiff is unaware of any difficulties that would be encountered in the administration of this class that would preclude its maintenance as a class action.

## **COUNT I - ACTION FOR VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. §1601, *ET SEQUI***
*(AS TO INTRUST)*

65. This is an action for violation of the Truth in Lending Act, 15 U.S.C. §1601 ("TILA"), and the regulations promulgated thereunder, seeking damages, interest, costs and attorney's fees.

66. Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

67. INTRUST violated TILA and Regulation Z with respect to the finance agreements represented by the Locicero Loan Agreement entered into by Ms. Locicero and the other members of the class by failing to properly deliver all "material disclosures" as required by TILA and Regulation Z prior to consummation of the finance transaction, including but not necessarily limited to the following:

> (a)  by failing to disclose accurately and properly "the annual percentage rate," in violation of 15 U.S.C. §1638(a)(4) and Regulation Z, 12 C.F.R. §226.18(e);

(b) by failing to disclose accurately and properly the "finance charge," in violation of 15 U.S.C. §1632(a) and Regulation Z, 12 C.F.R. §226.18(e); and

(c) by failing to disclose accurately and properly the "amount financed" in violation of 15 U.S.C. §1638(a)(2) and Regulation Z, 12 C.F.R. Section 226.18(b).

68. By reason of the aforesaid violations of the TILA and Regulation Z, INTRUST is liable to Plaintiff and the members of the class for statutory damages pursuant to 15 U.S.C. §1640(a).

69. Pursuant to 15 U.S.C. §1640, Plaintiff and the members of the class are entitled to recover reasonable attorney's fees to be determined by the Court.

70. Plaintiff has retained the undersigned law firm to represent his interest herein and is obligated to pay said law office a reasonable fee for its services.

## COUNT II - DECLARATORY AND INJUNCTIVE RELIEF UNDER FLORIDA STATUTES CHAPTER 86
*(AS TO BOTH DEFENDANTS)*

71. This claim for declaratory relief is brought under the Florida Declaratory Judgment Act, Fla. Stat. §86.021, to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations of Ms. Locicero and members of the class and the consumer protections embodied in the CSOA.

72. Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

73. INTRUST and GreenSky maintain that GreenSky may operate a business of obtaining extensions of credit for consumers and providing advice or assistance to consumers

15

with respect to obtaining an extension of credit for consumers without complying with the requirements of the CSOA. As such, consumers will not receive the protections and benefits of Florida law until this Court declares and affirms that GreenSky must comply with the requirements of Florida's Credit Service Organization Act.

74. Based on information and belief, there is an actual, judicable controversy between the parties relating to the construction of the credit services contract of Ms. Locicero and members of the Class and the application of Florida's Credit Service Organization Act to those contracts.

75. The public interest is best served by granting the requested injunctions, as the public has a compelling interest in preventing GreenSky from violating the statutory and common law of the State of Florida.

76. Ms. Locicero and other members of the Class are likely to succeed on the merits of this action, as the CSOA explicitly requires that GreenSky provide specific disclosures to consumers for whom it provided services for.

## **COUNT III - RESTITUTION AND UNJUST ENRICHMENT**
### (*AS TO BOTH DEFENDANTS*)

77. Ms. Lociero realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

78. By paying or agreeing to pay money for credit services, Ms. Locicero and members of the Class conferred a benefit of illegally collected charges upon GreenSky and INTRUST.

79. Defendants accepted the benefits conferred upon them by Ms. Locicero and members of the Class.

80.     Defendants' collection, acceptance and retention of these charges, when GreenSky was not entitled to the charges as a matter of law, is and was and continues to be unjust and inequitable, and Defendants have not refunded the charges to Ms. Locicero and members of the Class.  Defendants should not be permitted to retain the benefits of those illegal charges. The continued withholding of the illegal charges is improper.

81.     Ms. Locicero and members of the Class conferred these unjust benefits upon Defendants after and as a result of Defendants' misconduct as set forth herein.

### COUNT IV -  ACTON FOR VIOLATION OF FLORIDA CREDIT SERVICE ORGANIZATIONS ACT ("CSOA")
*(AS TO BOTH DEFENDANTS)*

82.     This is an action for violation of the Florida Credit Service Organizations Act, Florida Statute §817.7001, *et seq.*  ("Florida CSOA"), brought herein pursuant to the doctrine of pendent jurisdiction.

83.     Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

84.     At all times material hereto, Ms. Locicero was a "buyer" as said term is defined under Florida Statute §817.7001(1).

85.     At all times material hereto, GreenSky was a "credit service organization" as said term is defined under Florida Statute §817.7001(2)(a).

86.     At all times material hereto, the monies owed to INTRUST under the Locicero Loan Agreement constituted an "extension of credit" as said term is defined under Florida Statute §817.7001(3).

87.     As a direct and proximate result of the above-described violations of the CSOA by GreenSky, Ms.  Locicero and the members of the Class have been damaged.

88. Pursuant to Florida Statute §817.706, Ms. Locicero and the members of the Class are entitled to recover actual damages, but in no case less than the amount paid by Ms. Locicero and the Class Members to GreenSky, plus reasonable attorney's fees, costs and punitive damages.

WHEREFORE, Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others similarly situated, prays:

A. For an order certifying the instant matter as a class action;

B. For equitable relief establishing that GreenSky may not continue operating as a credit service business without complying with the requirements of Florida law and that all extensions of credit arranged by GreenSky are void by operation of law;

C. For statutory damages, costs, and attorney's fees against INTRUST pursuant to 15 U.S.C. §1640;

D. For actual and punitive damages together with attorney's fees against Defendants, jointly and severally, as a result of the practices as described herein pursuant to Florida Statute §817.706(1); and

E. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others similarly situated, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

Respectfully submitted this 25th day of July, 2017,

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Ft. Lauderdale, FL 33316
(954) 763-8660
(954) 763-8607 (FAX)
Email: rphyu@aol.com;
rwmurphy@lawfirmmurphy.com

COUNSEL FOR PLAINTIFF