**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:17-cv-61484-DPG**

FRANCISCA D. LOCICERO, an individual,
on behalf of herself and all others similarly
situated,

        Plaintiff,

vs.                               **CLASS ACTION**

INTRUST BANK, N.A., a national banking
association, and GREENSKY, LLC, a Georgia
limited liability company,

        Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

    Plaintiff, Francisca D. Locicero, an individual ("Ms. Locicero"), on behalf of herself and

all others similarly situated, sues Defendants, INTRUST Bank, N.A., a national banking

association ("INTRUST"), and GreenSky, LLC, a Georgia limited liability company

("GreenSky"), and alleges:

### GENERAL ALLEGATIONS

### I.  NATURE OF THE ACTION

    1.    This case concerns the Florida arm of a national loan-generation scheme.  As

detailed below, Defendant GreenSky uses merchants around the nation to finance expensive

"home improvement" products, such as air conditioning units, solar panels and the like, through

high-pressure in-home solicitations.  GreenSky then brokers the loans to complete these

purchases, with virtually no questions asked.

2.     Through this scheme, GreenSky collects brokerage and servicing commissions for loans that most consumers were not aware had been made by third-party lenders.

3.     GreenSky is not licensed to make or to arrange for consumer credit in the State of Florida.  Notwithstanding the absence of a license, GreenSky solicits and arranges for credit anyways, all while inducing sales through deception and unlawful practices, extending credit without providing loan documents, failing to provide required cancelation disclosures, and charging substantial undisclosed fees.

4.     In order to avoid scrutiny by state and federal regulators, GreenSky entered into agreements with state and federal banks, including INTRUST, whereby the bank would act as the "lender" for the extension of credit purportedly made to unsuspecting consumers.  Third-party lenders, however, failed to provide consumers with disclosures concerning the "extension of credit" in the manner mandated by federal and state law.

5.     Due to these unlawful practices, Ms. Locicero, and all persons similarly situated (the "Class") as defined below, are entitled to equitable relief, as well as statutory damages, together with costs and reasonable attorney's fees.

## II.  JURISDICTION

6.     The jurisdiction of this court is established pursuant to Federal Truth in Finding Act, 15 U.S.C. §1640 ("TILA") and for state law claims pursuant to the pendent jurisdiction of the Court.

## III.  ALLEGATIONS AS TO THE PARTIES

7.     At all times material hereto, Plaintiff, Francisca D. Locicero ("Ms. Locicero"), is *sui juris* and resident of Broward County, Florida.

8.     At all times material hereto, Defendant INTRUST is a banking corporation organized in the State of Kansas.

9.     At all times material hereto, INTRUST was in the business of extending credit to consumers for personal and household purposes.

10.     At all times material hereto, GreenSky was a Georgia limited liability company doing business in the State of Florida.

## IV.  FACTUAL ALLEGATIONS

### A.  Background of GreenSky's Home Solicitation and Loan-Generation Schemes

11.     For many years, GreenSky has flouted consumer protection laws around the country through its home solicitation and loan-generation schemes.  From state to state, these schemes look the same:  GreenSky partners with local merchants who call consumers at home, using high-pressure and deceptive techniques to sell expensive products and services – such as air conditioning units, solar panels and the like – that are either unnecessary or do not work as promised.  As part of each sale, GreenSky brokers and services the loans to buy the products.  Consumers get duped into financing products and services based on false promises of rebates, fictitious government funding programs and the like that, by and large, are not actually available to them.  Ultimately, GreenSky pockets the brokerage and servicing fees for these loans while passing the actual credit risk along to other entities.

12.     As a result of its aggressive marketing, GreenSky has grown to a business enterprise with a $3.6 billion capital value with a network of over twelve thousand (12,000) merchants and fourteen (14) banks, including INTRUST, Regions Bank and SunTrust Bank.

13.     In the past several years, GreenSky has been sued for its misconduct in separate actions brought throughout the United States, including Florida, Oregon, California, Colorado,

Louisiana, New Mexico, New Jersey and South Carolina.  In each case, GreenSky allegedly

brokered consumer loans without disclosing the costs of the loans, and the fees paid to GreenSky

for arranging credit.

14.     In the process of brokering loans, GreenSky provided consumers with loans with

no questions asked.

15.     Lenders such as INTRUST are delinquent in their oversight of the loan process:

they do not confirm that the consumers actually receive copies of loan documents, they do not

adequately consider each consumer's ability to repay, and they do not adequately ensure that

these consumers have even agreed to take out the loans in the first place.

16.     Consumer complaints against GreenSky for these practices are scathing and too

numerous to quote in full.  Nonetheless, consumers consistently tell the same story:  an

unscrupulous home solicitor sells them a bill of goods, and GreenSky enables the purchase by

arranging for a loan, without prior disclosure of loan documents, or in some cases, prior

authorization at all:

- "Greensky is literally funding a Ponzi Scheme in Florida called Energy Solutions of Florida /Renuen Corporation."[1]

- "GreenSky Financial is trying to collect a debt that I never agreed to, and that I cancelled within three days, and is ruining my credit. A salesman from [redacted] came to my door to sell me solar panels. He told me a bunch of information that turned out to be false, including about whether the solar panels would save me money. The salesman told me the panels would power my house, but [redacted] told me later the panels were not sufficient to power my house. I never signed a loan agreement, but in [redacted] 2013 I received loan documents from Greensky Financial claiming I owed $17000.00. They sent a

---

[1] Scam.com, *GreenSky is Literally Funding a Ponzi Scheme*, available at http://www.scam.com/showthread.php?622376-Greensky-is-literally-funding-a-Ponzi-Scheme (last accessed October 24, 2017).

loan agreement without my signature, and I never signed any agreement."[2]

- "I feel I am a victim of a scam. A man, [redacted], of [redacted] stopped by my home stating he wanted to put vinyl siding on my house to make it look better. I told him I could not afford it. . . . . Note: My home didn't need vinyl siding to protect it as it was covered with slate shingles that will be here forever. Next thing I know I receive a loan statement from Green Sky. . . . I had not asked for credit, filled out an application or signed a contract of any kind, signed or agreed to anything with [redacted], Green Sky, or [redacted] Bank."[3]

- "A loan was taken out in my name. I was sent a letter saying I had taken out the loan when I had not. . . . I disputed this in writing, filed a police report, put a fraud alert with the credit agencies. The company is Greensky Loan Services. Located in [redacted], GA."[4]

17.     The business practices of GreenSky have not gone completely unnoticed by state regulators.  On June 9, 2017, New Jersey Division of Consumer Affairs, Office of Consumer Protection filed an Assurance of Voluntary Compliance in an administrative action styled "*In the Matter of GreenSky Servicing, LLC*" ("New Jersey Enforcement Proceeding").

18.     The New Jersey Enforcement Proceeding stemmed from complaints from consumers that alleged that they were unaware that home improvement loans had been taken out in their names, were not given the opportunity to read or sign loan documents before becoming

---

[2] Bad Finance, *GreenSky Trade Credit LLC*, available at http://badfinance.org/review/1627387/greensky-trade-credit-llc-consumer-loan (last accessed October 24, 2017).

[3] Bad Finance*, GreenSky LLC*, available at http://badfinance.org/review/1480941/greensky-trade-credit-llc-debt-collection (last accessed October 24, 2017).

[4] Bad Finance, *GreenSky Trade Credit LLC*, available at http://badfinance.org/review/1742433/greensky-trade-credit-llc-consumer-loan (last accessed October 24, 2017).

obligated on loans, and/or were not provided loan documents after agreeing to the loan. *See* www.nj.gov/oag/newsreleases17/pr20170622a.html. In addition to providing reimbursements and loan forgiveness to certain consumers, GreenSky agreed in the New Jersey Enforcement Proceeding to change its business practices, including:

- Ensuring that all materials used by GreenSky clearly and conspicuously convey to consumers that it is a loan program;

- Requiring contractors to obtain a borrower's written or electronic authorization to process a transaction on the borrower's account; and

- Ensuring no borrower can be charged by a contractor for a transaction until GreenSky has confirmed electronically, via telephone, or in writing, that the borrower has received the loan agreement.

19.    As detailed below, the experience of Ms. Locicero and other class members mirrors the grievances of consumers throughout the United States.

### B.  Details of In-home Solicitation of Ms. Locicero

#### 1.  *Deceptive Sales Practices of Home Improvement Contractor*

##### *a.  General*

20.    At all times material hereto, Ms. Locicero was the legal title owner of a single-family home located at 1050 N.W. 53rd Street, Pompano Beach, Florida 33064 ("Locicero Residence"), where Ms. Locicero maintained her place of residence.

21.    On or about July 24, 2016, Ms. Locicero received an unsolicited telephone call on her cell phone from whom Ms. Locicero believes was a salesperson at "Fluid Air Concepts" ("Fluid Air" or "A/C Contractor") concerning a "sales program" to help low income persons save on energy costs.

22.     In the ensuing telephone call, the salesperson falsely told Ms. Locicero that Ms. Locicero could save a substantial amount of money by upgrading the air conditioning system at the Locicero Residence using a Florida Power and Light ("FPL") Program "that would pay for itself" when in fact no such FPL Program existed.

23.     In the belief that there was some sort of "FPL Program" to help low income persons like herself, Ms. Locicero agreed to meet with a sales person of Fluid Air at her home.

24.     Several days later, on or about July 28, 2016, an employee and/or agent of Fluid Air who identified herself as "Michelle" arrived at the Locicero Residence for the purpose of "inspecting" the air conditioner unit and discussing the so-called "FPL Program."

25.     After "inspecting" the air conditioner unit at the Locicero Residence, "Michelle" falsely represented to Ms. Locicero that the "FPL Program" provided financial assistance to homeowners such as Ms. Locicero to change out old air conditioner units for energy efficiency when no such "FPL Program" existed.

26.     "Michelle" falsely represented to Ms. Locicero that the "FPL Program" would allow Ms. Locicero to change-out the air conditioner at the Locicero Residence without Ms. Locicero paying any money out of pocket when in fact it was the intent of Fluid Air to create a loan in the name of Ms. Locicero to finance the purchase of the air conditioner replacement without her permission or consent.

27.     In the belief that an "FPL Program" existed which would assist Ms. Locicero in changing out her air conditioner unit, Ms. Locicero signed a document entitled "Agreement for Change Out in Service" ("A/C Change Out Agreement").

28.     A true and correct copy of the A/C Change Out Agreement is attached hereto and incorporated herein by reference as Exhibit "A."

29.     Within forty-eight (48) hours of Ms. Locicero signing the A/C Change Out
Agreement, on Saturday, July 30, 2016, Fluid Air replaced the air conditioner unit with a new
unit ("A/C Unit") at the Locicero Residence without obtaining a permit and without complying
with applicable code requirements, including *inter alia* anchoring the A/C Unit to the slab of the
Locicero Residence.

### 2. Non-Compliance with "Cool-Down" Statutes

#### a. As to the Florida Home Solicitation Act

30.     As more particularly described above, the sale of the A/C Unit constituted a
"home solicitation sale" as said term is defined under Florida Statute §501.021(1).

31.     Pursuant to Florida Statute §501.031(2), every home solicitation sale should be
evidenced by a writing which contains a statement ("Right to Cancel") under a conspicuous
caption, "BUYER'S RIGHT TO CANCEL":

> "This is a home solicitation sale, and if you do not want the goods
> or services, you may cancel this agreement by providing written
> notice to the seller in person, by telegram, or by mail.  This notice
> must indicate that you do not want the goods or services and must
> be delivered or postmarked before midnight of the third business
> day after you sign this agreement.  If you cancel this agreement,
> the seller may not keep all or part of any cash down payment."

32.     The A/C Change Out Agreement did not have the statutorily mandated
disclosures with respect to both form and content of the Right to Cancel in contravention of
Florida Statute §501.031.

#### b. As to the Federal Cooling-Off Rule

33.     As more particularly described above, the sale of the A/C Unit was a "door-to-
door sale" as said term is defined under 16 C.F.R. §429.0(a).

34.     As more particularly described above, the A/C Unit constituted a "consumer good" as said term is defined under 16 C.F.R. §429.0(b).

35.     As more particularly described above, Fluid Air was a "seller" as said term is defined under 16 C.F.R. §429.0(c).

36.     16 C.F.R. §429.1 provides in pertinent part that it is an unfair and deceptive act or practice for any seller to:

> (a) Fail to furnish the buyer with a fully completed receipt or copy of any contract pertaining to such sale at the time of its execution, which is in the same language, e.g., Spanish, as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer or on the front page of the receipt if a contract is not used and in bold face type of a minimum size of 10 points, a statement in substantially the following form:
>
> "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right."
>
> The seller may select the method of providing the buyer with the duplicate notice of cancellation form set forth in paragraph (b) of this section, provided however, that in the event of cancellation the buyer must be able to retain a complete copy of the contract or receipt. Furthermore, if both forms are not attached to the contract or receipt, the seller is required to alter the last sentence in the statement above to conform to the actual location of the forms.
>
> (b) Fail to furnish each buyer, at the time the buyer signs the door-to-door sales contract or otherwise agrees to buy consumer goods or services from the seller, a completed form in duplicate, captioned either "NOTICE OF RIGHT TO CANCEL" or "NOTICE OF CANCELLATION," which shall (where applicable) contain in ten point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract.

9

Notice of Cancellation

[enter date of transaction]

………………………………………………………………………
(Date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN BUSINESS DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to [Name of seller], at [address of seller's place of business] NOT LATER THAN MIDNIGHT OF [date].

I HEREBY CANCEL THIS TRANSACTION.

(Date)…………………………………………………………

(Buyer's signature)……………………………………………

37.     As more particularly described above, Fluid Air failed to provide the required disclosure of the right to cancel in the form and with the content mandated under 16 C.F.R. §429.1(a).

38.     As more particularly described above, Fluid Air failed to provide Ms. Locicero as a buyer the mandated "Notice of Right to Cancel" or "Notice of Cancellation" mandated by 16 C.F.R. §429.1(b).

39.     Fluid Air failed to furnish copies of the "Notice of Cancellation" to Ms. Locicero as a buyer in the manner mandated by 16 C.F.R. §429.1(c).

40.     As more particularly described above, Fluid Air has engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Florida Statute §501.204(1).

41.     A violation of the Cooling-Off Rule and the Florida Home Solicitation Act by Fluid Air is a *per se* violation of the Florida Deceptive and Unfair Trade Practices Act pursuant to Florida Statute §§501.203(3)(a), (b) and (c).

## C. Deceptive Financing Practices of GreenSky

### 1. Unauthorized Loan Arranged by GreenSky

42.     Several days after the installation of the air conditioner unit at the Locicero Residence, Ms. Locicero received a letter ("Cover Letter") from GreenSky informing Ms. Locicero that Ms. Locicero had a loan agreement for Eight Thousand Dollars ($8,000.00).

43.     A true copy of the Cover Letter from GreenSky with enclosures, is attached hereto and incorporated herein by reference as Composite Exhibit "B."

44.     Through the Cover Letter, GreenSky provided Ms. Locicero a document entitled "GreenSky Installment Loan Agreement" ("Locicero Loan Agreement").

45.     A true copy of the Locicero Loan Agreement is attached hereto and incorporated herein by reference as Exhibit "C."

46.     Pursuant to the Locicero Loan Agreement, INTRUST purportedly extended credit to Ms. Locicero in the amount of Eight Thousand Dollars ($8,000.00).

47.     Ms. Locicero did not sign the Locicero Loan Agreement, and GreenSky never obtained an executed copy of the Locicero Loan Agreement.

48.     Ms. Locicero did not assent to any of the terms and provisions outlined in the Locicero Loan Agreement.

49.     Ms. Locicero specifically did not assent to the choice-of-law provision outlined in the Locicero Loan Agreement.

50.     Fluid Air did not disclose, explain, or provide any of the written provisions outlined in the Locicero Loan Agreement, either verbally or in writing.

51.     At all times relevant to this dispute, there was no bargained-for consideration for the Locicero Loan Agreement.

52.     At all times relevant to this dispute, there was no mutual assent to the terms of the Locicero Loan Agreement.

53.     The Locicero Loan Agreement is a series of add-on provisions that have no legal effect on the A/C Change Out Agreement.

54.     At no point has Ms. Locicero accepted the additional terms contained in the Locicero Loan Agreement, which were mailed to her after she entered into an agreement with Fluid Air to replace her air conditioning unit.

55.     GreenSky and INTRUST recorded trade lines to Ms. Locicero's credit report and the credit reports of the class members, even though the Plaintiff and putative class members never entered into contracts for the extension of credit with GreenSky and INTRUST.

56.     GreenSky and INTRUST have collected and/or have attempted to collect monies from Ms. Locicero and the other class members even though the Plaintiff and putative class members never entered into contracts for the extension of credit with GreenSky and INTRUST.

### 2.  Failure to Disclose Fees to GreenSky

57.     Pursuant to the Locicero Loan Agreement, INTRUST represented the following with respect to the terms for the extension of credit:

| ANNUAL PERCENTAGE RATE The cost of credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid when you have made all payments as scheduled |
|---|---|---|---|
| 7.99% | $    3,741.05    (e) | $    8,000.00    (e) | $    11,741.05    (e) |

| Your payment schedule will be: | | |
|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due |
| 5 | $    53.27    (e) | Beginning 09/10/2016 and monthly thereafter for a total of 5 Months ("Promotional Payment Period") |
| 114 | $    99.78    (e) | Beginning monthly thereafter for a total of 114 months |
| 1 | $    99.78    (e) | 08/10/2026 |

Late Charge: If payment is more than 10 days late, you will be charged the lesser of $25 ($15 in Iowa) or 5% of the payment amount past due.

Prepayment: If you pay off early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge.
See the rest of this document for any additional information for nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.
"(e)" means estimate

("TILA Disclosure").

58.     As part of the TILA Disclosure, INTRUST represented as the "Itemization of Amount Financed" that Eight Thousand Dollars ($8,000.00) was paid to Fluid Air ("Itemization of Amount Financed Disclosure").

59.     The Itemization of Amount Financed Disclosure was materially false insofar as Eight Thousand Dollars ($8,000.00) was not in fact paid to Fluid Air.  Rather, GreenSky as opposed to Fluid Air received the loan proceeds in whole or in part and only a portion of same was actually paid to the contractor, Fluid Air.

60.     The Itemization of Amount Financed Disclosure included an undisclosed fee ("Credit Service Fee") paid to GreenSky for arranging for the credit represented by the Locicero Loan Agreement.

61.     The Credit Service Fee was a fee that would not have been charged in a "cash-only" transaction with the merchant.

62.     The Credit Service Fee constituted an undisclosed finance charge.

63.     The Itemization of Amount Financed Disclosure in the finance agreements of Ms. Locicero and class members falsely represent that the full amount financed was paid to third-parties when in fact the "amount financed" was paid to GreenSky.

### 3.  Improper "Open-End" Credit Disclosures

64.     15 U.S.C. §1602(j) defines open-end credit as follows:

> The term "open end credit plan" and "open end consumer credit plan" mean a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance.  A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open end credit plan even if credit information is verified from time to time.

> 15 U.S.C. §1602(j).

65.     Despite having certain credit disclosures germane to closed-end credit extension as seen with the TILA Disclosure above, INTRUST in fact contemplated an "open-end credit plan" in the Locicero Loan Agreement which provided as follows:

> 1.  Installment Loan Program.  You may make purchases of goods or services from Merchant/Provider, in total up to the "Amount Financed" set forth on the first page of this Agreement, during the purchasing window time period specified on your Shopping Pass, which is incorporated here by reference.  You agree that each time you make a purchase of goods or services from Merchant/Provider, you are authorizing us to extend credit to you and to pay

Merchant/Provider directly on your behalf.  At the end of the purchasing window, you will no longer be permitted to make new purchases.  You agree not to make purchases in excess of the Amount Financed shown above, but if you do, you agree that we may, in our sole discretion, increase the Amount Financed to include such excess amount in a Summary of Account at Conversion that reflects such increased Amount Financed and resulting increased Finance Charge and Total of Payments.  The dated electronic record of such excess purchase(s) will evidence your acceptance of any such increased terms.  We will total the purchases you made during the purchasing window and provide you with an updated Summary of Account at Conversion that will show (based on actual total purchases) the final Amount Financed, Finance Charge, Total of Payments and remaining payment schedule for your Installment Loan.  Unless required to make minimum payments during your purchasing window, you will be obligated to begin making payments in the amounts and on the dates shown on your updated Summary of Account at Conversion, although you may make greater payments at any time without penalty.  You agree that, except for the updated amounts, if any, shown on your updated Summary of Account at Conversion, including any adjustments in scheduled payments to reflect your final Amount Financed and Finance Charges due, all other terms and disclosures of this Agreement will remain in full force and effect.

(Locicero Loan Agreement – ¶1)
("Open-End Provision").

66.     Closed-end credit, in contrast to open-end credit, usually involves a single transaction such as a mortgage loan to buy a home, appliance or the like.  The Open-End Provision provides for multiple purchases of goods or services within a "purchasing window time period."

67.     In order to further their scheme to avoid providing meaningful credit disclosures as mandated for closed-end loan agreements, Defendants used the artifice of a so-called "Shopping Pass" ("GreenSky Shopping Pass") which had attributes of a credit card.

68.     As part of the enclosures with the Cover Letter, GreenSky provided Ms. Locicero with instructions on how to use the GreenSky Shopping Pass ("GreenSky Shopping Pass Instructions").

69.     A true and correct copy of the GreenSky Shopping Pass Instructions is attached hereto and incorporated herein by reference as Exhibit "D."

70.     At the top of the GreenSky Shopping Pass Instructions, GreenSky provided Ms. Locicero with the actual GreenSky Shopping Pass:

 

71.     The GreenSky Shopping Pass had all the attributes of a credit card including an expiration date, an account number, and an electronic scan barcode.

72.     The GreenSky Shopping Pass also had a "CVV Number" – also known in the credit card industry as a "card verification value."  The CVV Number is used by credit card issuers to reduce the incidence of credit card fraud by requiring the consumer or merchant to disclose the code to the issuer when initiating a credit transaction.

73.     In the case of Defendants, the CVV Number served no valid purpose as consumers such as Ms. Locicero only received the CVV Number after the extension of credit had been paid and the merchant has been paid.

74.     In the Cover Letter, Defendants also stated the following concerning the intended open-end credit contemplated by Defendants:

- Your Loan Agreement is included with this packet and contains the full terms and conditions of your loan. In addition, you can get current account info, enroll in online payments, and access your Loan Agreement online by enrolling in the GreenSky® customer portal at greenskyonline.com.

- When you agree to the terms of the Loan Agreement and are ready to make your purchase, give your account number, expiration date, and photo ID to your contractor. Use of the Shopping Pass or the associated Installment Loan to make a purchase constitutes acceptance of the terms of the loan.
- Your Shopping Pass is used to access your credit limit. Please protect it like any other financial device. Contact us immediately at 866-936-0602 if you lose your Shopping Pass.

75.     In the GreenSky Shopping Pass Instructions, Defendants represented the following with respect to the ability of Ms. Locicero and other persons similarly situated to contest an authorized transaction:

> Standard MaserCard [sic] rules apply.  Any unauthorized transactions must be report [sic] to GreenSky® within 60 days.

> (misspelling in original).

76.     The artifice of the "Shopping Pass" was designed by Defendants to allow Defendants to assert that the extension of credit is in the nature of an "open-end" loan in the manner of a credit card so as to limit the ability of consumers to dispute unauthorized transactions by requiring consumers to follow the notice requirements of 15 U.S.C. §§1601-1666j, known more commonly as the "Fair Credit Billing Act."

77.     Likewise, in the marketing materials used by GreenSky to solicit business from merchants, GreenSky describes the extensions of credit contemplated by Defendants as being "just like a credit card":[5]

---
[5] https://www.slideshare.net/dzalik/greensky-dealer-presentation.



78.     As INTRUST has used the artifice of a credit card for the extension of credit under the Loan Agreement, the Locicero Loan Agreement is also subject to the requirements of 15 U.S.C. §1665e, of the "Credit Card Accountability and Disclosure Act of 2009" or the "Credit CARD Act" ("Credit CARD Act"), including the protections against improvident lending.

79.     The Credit CARD Act imposes underwriting requirements on card issuers such as INTRUST, including a general requirement, applicable to all consumers, that an issuer may not open a credit card account unless the issuer considers the ability of the consumer to make the required minimum payments.  15 U.S.C. §1665e; Regulation Z §1026.51(a)(1)(i).

80.     INTRUST did not establish or maintain reasonable policies and procedures to consider ability-to-repay when the extension of credit made to Ms. Locicero and other class members were made.

81.     Subsequent to the purported extension of credit represented by the Locicero Loan Agreement, INTRUST has failed to provide periodic statements with the disclosures as required for open-end credit as mandated by 15 U.S.C. §1637(b) and Regulation Z §1026.4(d).

82.     As a result of its relationship with GreenSky, INTRUST has created hundreds if not thousands of loans similar to the Locicero Loan Agreement without providing the disclosures mandated by the TILA prior to consummation of the credit transaction, without proper disclosure of the Credit Service Fee, without complying with the requirements of the Credit CARD Act with respect to the underwriting, and without providing mandated periodic statements.

### 4.   Details of Florida Credit Service Organization Act ("CSOA") Non-Compliance by GreenSky

83.     Pursuant to Florida Statute §817.7001, a "credit service organization" means any person who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can or will sell, provide, or perform, in return of the payment of money or other valuable consideration any of the following services:

1.     Improving the buyer's credit record, history or ratings;

2.     Obtaining an extension of credit for a buyer; or

3.     Providing advice or assistance to a buyer with regard to services described in either subparagraph 1. or subparagraph 2. above.

84.     Pursuant to Florida Statute §817.7001(3), an "extension of credit" as related to a credit service organization "means the right to defer payment of debt or to incur debt and defer its payment, offered or granted primarily for personal, family, or household purposes."

85.     As detailed above, GreenSky acted as a credit service organization in its actions with Ms. Locicero as described above in that GreenSky sold, provided and performed in return for the payment of money or other valuable consideration the procurement and obtaining an extension of credit for Ms. Locicero as a buyer.

19

86.    As a result of the Locicero Loan Agreement, Ms. Locicero was a "buyer" as said term is defined under Florida Statute §817.7001 of the services of GreenSky as a credit service organization.

87.    Pursuant to Florida Statute §817.7005(1), a credit service organization shall not charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit service organization has agreed to perform for the buyer, unless the credit service organization has obtained a surety bond of Ten Thousand Dollars ($10,000.00) issued by a surety company admitted to do business in this state and has established a trust account at a federally insured bank or savings and loan association located in this state.

88.    By information and belief, GreenSky did not obtain a surety bond or establish a trust account as mandated by Florida Statute §817.7005(1) prior to providing the services of a credit service organization to Ms. Locicero and other persons similarly situated.

89.    Pursuant to Florida Statute §817.702, a credit service organization must also give a consumer to whom it is providing services, a written statement which will detail the services provided, their right to certain required information for the consumer, and the total fees to be charged to the consumers before the credit service organization actually performs any services on the consumer's behalf.

90.    GreenSky did not provide the written statement to Ms. Locicero required by Florida Statute §817.702.

91.    Pursuant to Florida Statute §817.704(2), a credit service organization must also provide a consumer written right to cancel the contract for credit services that it establishes with a consumer in a specific form.

92.     GreenSky did not provide Ms. Locicero with the required right to cancel as required under Florida Statute §817.704(2).

93.     The actions described above by GreenSky were willful and knowing.  GreenSky is a sophisticated, nationwide business which has knowledge of the various state laws that govern credit services.

94.     Pursuant to Florida Statute §817.706, a credit service organization which willfully fails to comply with the requirements of the CSOA is liable for actual damages, including all amounts paid to the credit service organization, together with reasonable attorney's fees, costs and punitive damages.

95.     During the applicable statute of limitations, GreenSky has acted as a credit service organization for hundreds if not thousands of Florida consumers such as Ms. Locicero without GreenSky complying with the requirements of the CSOA.

96.     During the applicable statute of limitations, Greensky has collected hundreds if not thousands of dollars in unlawful fees without complying with the requirements of the CSOA.

### 5. *Derivative Liability for INTRUST for Misconduct of Sellers*

97.     Paragraph 23 of the Locicero Loan Agreement provides:

> NOTICES:  ANY HOLDER OF THIS CONSUMER CREDIT
> CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES
> WHICH THE DEBTOR COULD ASSERT AGAINST THE
> SELLER OF GOODS OR SERVICES OBTAINED WITH THE
> PROCEEDS HEREOF.  RECOVERY HEREUNDER BY THE
> DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
> DEBTOR HEREUNDER.

98.     Pursuant to 16 C.F.R. §433, known more commonly as "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "FTC Holder Rule," INTRUST is subject to all claims and defenses of Ms. Locicero and the other

members of the class as consumers which are available against the credit sellers, to wit: Fluid Air and GreenSky.

### V.   CLASS ACTION ALLEGATIONS

99.     Ms. Locicero brings this action on her own behalf and as representative of all those similarly situated pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, with respect to equitable relief sought herein, and Rule 23(b)(3), Federal Rules of Civil Procedure, with respect to the damages sought herein.

100.    This action is brought on behalf of all persons who: (1) obtained an extension of credit through GreenSky represented by a contract in the same or substantially similar form as the Locicero Loan Agreement, and (2) were not provided disclosures by INTRUST which were required under the TILA and Regulation Z in the form or substantially similar form as the TILA Disclosure.

101.    The class above includes a subclass of persons ("FCCPA Subclass") who have been subjected to collection or reporting activities by Defendants for loan agreements which the FCCPA Subclass did not enter into with Defendants.

102.    Although the precise number of class members is presently unknown and can only be determined by discovery, the proposed classes satisfied the requirements of Rule 23(a)(1), Federal Rules of Civil Procedure, as, upon information and belief, INTRUST has extended credit to more than one hundred (100) customers who executed all similar finance agreements.

103.    The members of the classes referred to above who are similarly situated with Ms. Locicero, or readily ascertainable are so numerous that joinder of all members is impractical. There is a well-defined community of interest in the questions of law and fact involved, affecting the parties to be represented in that each party has been injured by, or has an interest in litigating

the legality of the practice of the Defendant alleged herein.  Proof of a common or single state of fact or set of facts will establish the right of each member of the class to recover.

104.    Plaintiff is a member of the classes because Plaintiff entered into the Locicero Loan Agreement that was obtained by GreenSky for which INTRUST failed to provide adequate disclosures under TILA and Regulation Z in the same manner as all other members of the class and has been subjected to collection and reporting activities by Defendants.

105.    The claim of Plaintiff raises common questions of law or fact common to the questions of law or fact raised by the claims of the individual class members in this action within the meaning of Rule 23(a)(2), Federal Rules of Civil Procedure.  The questions of law or fact of Plaintiff arise out of a common practice in the manner in which Defendants have dealt with Plaintiff and class members, and predominate over any facts that may affect only individual class members within the meaning of Rule 23(b)(3), Federal Rules of Civil Procedure.

106.    Common questions of law or fact include whether Defendants provided an extension of credit in the form of the Locicero Loan Agreement in violation of TILA and Regulation Z which extension of credit was arranged by GreenSky in violation of the CSOA.

107.    The requirement of Rule 23(a)(3), Federal Rules of Civil Procedure, is met because the claims of Plaintiff are typical of the claims of class members.  Plaintiff and class members executed a finance agreement in the same or substantially similar form as the Locicero Loan Agreement which credit was obtained by GreenSky during the relevant class period and are entitled to statutory and actual damages as a result of the failure to disclose and provide the required material information under TILA and the CSOA.

108.    The requirement of Rule 23(a)(4), Federal Rules of Civil Procedure, is met

because Plaintiff will fairly and accurately protect the interests of the class.  No antagonism

exists between the interest of the Plaintiff and the interest of other class members. Counsel for

Plaintiff is experienced in class action litigation and is well qualified to conduct this litigation.

109.    This action is appropriate for class treatment pursuant to Rule 23(b)(2), Federal

Rules of Civil Procedure, because Defendant has acted or has refused to act on grounds generally

applicable to the entire class, thereby making appropriate final and injunctive or corresponding to

declaratory relief with respect to the class as a whole.

110.    A class action is superior to other methods for the fair and efficient adjudication

of this controversy within the meaning of Rule 23(b)(3), Federal Rules of Civil Procedure,

because among other things, it is able to concentrate the litigation of the class members' claims

in one form, since it will conserve party and judicial resources and facilitate the consistency of

adjudications.  Furthermore, as the damages suffered by individual class members in each class

be relatively small, their interest in maintaining separate actions is questionable and the expense

and burden of individual litigation makes it impractical for them to seek individual redress for

the wrongs done to them.  Additionally, the prosecution of separate claims by the individual

class members, even if possible, would create a risk of inconsistent or varying adjudications with

respect to individual class members against Defendant.  Plaintiff is unaware of any difficulties

that would be encountered in the administration of this class that would preclude its maintenance

as a class action.

**COUNT I - ACTION FOR VIOLATION OF THE**
**TRUTH IN LENDING ACT, 15 U.S.C. §1601, *ET SEQUI***
***(AS TO INTRUST ONLY)***

111.    This is an action for violation of the Truth in Lending Act, 15 U.S.C. §1601

("TILA"), and the regulations promulgated thereunder, seeking damages, interest, costs and attorney's fees.

112.    Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1 through 110 above as if set forth hereat in full.

113.    As described above, to the extent that INTRUST made a closed-end credit transaction, INTRUST violated TILA and Regulation Z with respect to the finance agreements represented by the Locicero Loan Agreement by failing to properly deliver all "material disclosures" as required by TILA and Regulation Z, prior to consummation of the finance transaction, in the form and manner provided under 15 U.S.C. §1638(a), including but not necessarily limited to the following:

(a)    by failing to disclose accurately and properly "the annual percentage rate," in violation of 15 U.S.C. §1638(a)(4) and Regulation Z, 12 C.F.R. §226.18(e);

(b)    by failing to disclose accurately and properly the "finance charge," in violation of 15 U.S.C. §1638(a)(3) and Regulation Z, 12 C.F.R. §226.18(e); and

(c)    by failing to disclose accurately and properly the "amount financed" in violation of 15 U.S.C. §1638(a)(2) and Regulation Z, 12 C.F.R. §226.18(b).

114.    As described above, to the extent INTRUST made an open-end credit transaction, INTRUST violated Regulation Z with respect to the agreements represented by the Locicero Loan Agreement by failing to provide the required disclosures under 15 U.S.C. §1637(a), by

failing to comply with the underwriting requirements of 15 U.S.C. §1665e, and by failing to provide the required periodic statements as required by 15 U.S.C. §1637(b).

115.     By reason of the aforesaid violations of the TILA and Regulation Z, INTRUST is liable to Plaintiff and the members of the class for statutory damages pursuant to 15 U.S.C. §1640(a).

116.     Pursuant to 15 U.S.C. §1640, Plaintiff and the members of the class are entitled to recover reasonable attorney's fees to be determined by the Court.

117.     Plaintiff has retained the undersigned law firm to represent his interest herein and is obligated to pay said law office a reasonable fee for its services.

## COUNT II - DECLARATORY RELIEF
### *(AS TO BOTH DEFENDANTS)*

118.     This claim for Declaratory Relief is brought under 28 U.S.C. §2201 to settle and obtain relief from uncertainty and insecurity with respect to the rights, status, and legal relations of Ms. Locicero and members of the class and the consumer protections embodied in the CSOA.

119.     Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1 through 110 above as if set forth hereat in full.

120.     GreenSky has obtained and continues to obtain purported extensions of credit for consumers without complying with the requirements of the CSOA.  As such, consumers will not receive the protections and benefits of Florida law until this Court declares and affirms that GreenSky must comply with the requirements of CSOA.

121.     INTRUST and GreenSky have reported and continue to report negative information based on the illegal credit extensions onto consumer credit reports.

122.    There is an actual, judicable controversy between the parties, relating to the formation of the credit services contracts of Ms. Locicero and the members of the Class and the application of CSOA to those contracts.

123.    Ms. Locicero and other members of the Class are likely to succeed on the merits of this action, as the CSOA explicitly requires that GreenSky provide specific disclosures to consumers for whom it provided services.

124.    The Plaintiff and putative class have a reasonable fear that the Defendants are enforcing and continue to enforce rights under credit contracts when such extensions of credit did not comply with the requirements of the CSOA and which were not consummated.

125.    The Plaintiff and putative class members have a reasonable fear of imminent damage to their credit reports and financial security.

126.    There is a bona-fide, actual, present practical need for a declaration that GreenSky has not complied with the CSOA and that the credit contracts of Ms. Locicero and the other class members were not consummated and are therefore not enforceable.

127.    The declaration concerns a present, ascertained, or ascertainable set of facts or present controversy to a state of facts.

128.    An immunity, power, privilege, or right of the Plaintiff and class members is dependent upon the facts or the law applicable to the facts.

129.    The Defendants have, or may reasonably have, an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

130.    The relief sought is not merely the giving of legal advice of the answers to questions propounded for curiosity.

## COUNT III - RESTITUTION AND UNJUST ENRICHMENT
### (*AS TO BOTH DEFENDANTS*)

131.     Ms. Locicero realleges and reaffirms the allegations contained in

Paragraphs 1 through 110 above as if set forth hereat in full.

132.     By paying or agreeing to pay money for credit services, Ms. Locicero and

members of the Class conferred a benefit upon GreenSky and INTRUST.

133.     Defendants accepted the benefits conferred upon them by Ms. Locicero and

members of the Class.

134.     Defendants' collection, acceptance and retention of these charges, when

Defendants were not entitled to the charges as a matter of law, is and was and continues to be

unjust and inequitable, and Defendants have not refunded the charges to the members of the

Class.  Defendants should not be permitted to retain the benefits of those illegal charges. The

continued withholding of the illegal charges is improper.

135.     Ms. Locicero and members of the Class conferred these unjust

benefits upon Defendants after and as a result of Defendants' misconduct as set forth herein.

## COUNT IV -  ACTION FOR VIOLATION OF FLORIDA CREDIT SERVICE ORGANIZATION ACT ("CSOA")
### (*AS TO BOTH DEFENDANTS*)

136.     This is an action for violation of the Florida Credit Service Organization Act,

Florida Statute §817.7001, *et sequi* ("CSOA"), brought herein pursuant to the doctrine of

pendent jurisdiction.

137.     Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1

through 110 above as if set forth hereat in full.

138.     At all times material hereto, Ms. Locicero was a "buyer" as said term is defined

under Florida Statute §817.7001(1).

139.     At all times material hereto, GreenSky was a "credit service organization" as said term is defined under Florida Statute §817.7001(2)(a).

140.     At all times material hereto, the monies purportedly owed to INTRUST under the Locicero Loan Agreement constituted an "extension of credit" as said term is defined under Florida Statute §817.7001(3).

141.     As a direct and proximate result of the above-described violations of the CSOA by GreenSky, Ms.  Locicero and the members of the Class have been damaged.

142.     Pursuant to Florida Statute §817.706, Ms. Locicero and the members of the Class are entitled to recover actual damages, but in no case less than the amount paid by Ms. Locicero and the Class Members to Defendants, plus reasonable attorney's fees, costs and punitive damages.

## COUNT V -  ACTION FOR VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT, FLORIDA STATUTE §559.55, *ET SEQUI* *(AS TO BOTH DEFENDANTS)*

143.     This is an action for violation of the Florida Consumer Collection Practices Act, Florida Statute §559.55, *et sequi* ("FCCPA"), brought herein pursuant to the doctrine of pendent jurisdiction.

144.     Ms. Locicero realleges and reaffirms the allegations contained in Paragraphs 1 through 110 above as if set forth hereat in full.

145.     At all times material hereto, Ms. Locicero and the class members were "debtors" and "consumers" as defined under Florida Statute §559.55(8).

146.     At all times material hereto, monies purportedly owed to INTRUST by Ms. Locicero and the other class members constituted a "debt" or "consumer debt" as defined under Florida Statute §559.55(6).

147.    At all times material hereto, Defendants were "persons" as defined under Florida Statute §559.72.

148.    Florida Statute §559.72(9) provides in pertinent part that in collecting consumer debts, no person shall claim, attempt or threaten to enforce a debt if such person knows that the debt is legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

149.    As detailed above, Defendants have violated the FCCPA by collecting or attempting to collect monies purportedly owed under the various loan agreements of Ms. Locicero and the other members of the FCCPA class when Defendants knew that Ms. Locicero and the other members of the FCCPA did not enter into the loan agreements being collected upon.

150.    As a result of the violation of the FCCPA by Defendants, Ms. Locicero and the FCCPA Subclass have been harmed.  Ms. Locicero and FCCPA Subclass are entitled to actual, statutory and punitive damages and attorney's fees pursuant to Florida Statute §559.77(2).

151.    Pursuant to Florida Statute §559.77(2), Ms. Locicero and the FCCPA Subclass seek injunction against Defendants from further violations of the FCCPA, including the collection of monies purportedly owed by Ms. Locicero and the FCCPA Subclass.

WHEREFORE, Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others similarly situated, prays:

A.    For an order certifying the instant matter as a class action;

B.    For equitable relief establishing that GreenSky may not continue operating as a credit service business without complying with the requirements of Florida law and that all extensions of credit arranged by GreenSky are void by operation of law;

C.    For statutory damages, costs, and attorney's fees against INTRUST pursuant to 15 U.S.C. §1640;

D.    For actual and punitive damages together with attorney's fees against Defendants, jointly and severally, as a result of the practices as described herein pursuant to Florida Statute §817.706(1); and

E.    With respect to the FCCPA Subclass, for statutory, actual and punitive damages, together with injunctive relief and attorney's fees against Defendants, jointly and severally, as a result of the practices as described herein pursuant to Florida Statute §559.77; and

F.    For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others similarly situated, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660
(954) 763-8607 (FAX)
Email: rphyu@aol.com;
rwmurphy@lawfirmmurphy.com

KATHLEEN P. HYLAND
*Admitted pro hac vice*
Hyland Law Firm, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 777-8536
(410) 777-8237 (FAX)
Email: kat@lawhyland.com
COUNSEL FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that a true and correct copy of the foregoing was served on October 25, 2017 on J. Anthony Love, Esquire, and Barry Goheen, Esquire, King & Spalding, LLP, 1180 Peachtree Street, N.E., Atlanta, Georgia 30309, telephone: (404) 572-4600, email: tlove@kslaw.com, bgoheen@kslaw.com, *counsel for Defendants*, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.


                              /s/ *Robert W. Murphy*
                              Attorney