**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

### CASE NO. 0:17-cv-61484-DPG

FRANCISCA D. LOCICERO, an individual,
on behalf of herself and all others similarly
situated,

    Plaintiff,

vs.              **CLASS ACTION**

INTRUST BANK, N.A., a national banking
association, and GREENSKY, LLC, a Georgia
limited liability company,

    Defendants.

_____/

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION
TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND SUPPORTING
MEMORANDUM OF LAW AND REQUEST FOR ORAL ARGUMENT**

  Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others

similarly situated ("Ms. Locicero"), by and through her undersigned attorneys, pursuant to Rule

7.1C, Local Rules of the United States District Court, Southern District of Florida, files this her

Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss Plaintiff's Amended

Complaint and Supporting Memorandum of Law [DE 35] filed herein by Defendants, INTRUST

Bank, N.A, a national banking association ("INTRUST"), and GreenSky, LLC, a Georgia limited

liability company ("GreenSky"):

### I. INTRODUCTION

  In their Motion to Dismiss, Defendants commence their argument by belittling Ms.

Locicero – a victim of consumer fraud by many actors – by characterizing the instant action as

some sort of scheme to avoid paying a debt.  Disparagements aside, the Defendants minimize the

real gravamen of the instant action:  that Ms. Locicero and other persons like her never agreed to the terms for the loan arranged by GreenSky.  To be sure, in the Amended Complaint, Ms. Lociero provided a detailed account of GreenSky's deceptive business practices throughout the country, including the recent New Jersey Enforcement Proceeding, which all mirror the facts in the instant action (Amended Complaint – ¶¶ 11-19).

To understand the business model of GreenSky, one must first ask the question:  ***what is GreenSky actually doing?***  According to the allegations of the Amended Complaint, GreenSky is a loan broker for consumer loans for among other things home improvement products and services (Amended Complaint - ¶ 1).  Although GreenSky collects brokerage and service commissions for loans, GreenSky is not licensed to make or arrange for consumer credit in the State of Florida. (Amended Complaint - ¶¶ 2-3).  Nor does GreenSky inform consumers of the fees that are ultimately paid to GreenSky by consumers or that the consumers are even entering into a loan with INTRUST and the other bank partners of GreenSky (Amended Complaint ¶¶ 14-18).

The essential principles of the relevant federal and state consumer protection laws in this action can be summarized as follows:

As to the Truth in Lending Act ("TILA") – to tell the consumer accurately and meaningfully the pertinent terms of credit.

As to the Florida Credit Services Organization Act ("CSOA") – to tell consumers the nature and cost for services of credit arrangers and to provide an opportunity to reject such services after a cool-down period.

<u>As to the Florida Consumer Collection Practices Act ("FCCPA")</u> – to protect consumers from being subject to abusive debt collection practices, including efforts to collect debts that are not owed.

The consumer protection laws were designed to protect the market economy and honest law-abiding businesses.  As such, federal and state law mandates honesty and requires specific disclosures to create informed consumers.  Compliance, however, by GreenSky and its partners would necessarily affect the ability of GreenSky to obtain significant hidden profits from consumers such as Ms. Locicero if such disclosures were made.

Instead of providing disclosures of the terms for the extension of credit before consummation as mandated by TILA, Greensky created an agreement in the form represented by Lociero Loan Agreement which GreenSky purposefully sent to consumers after the extension of credit was made and after improvements and services were provided.  At the risk of being flippant, the form loan agreement used by GreenSky is also a veritable "Frankenstein loan agreement" as GreenSky improperly cobbled the provisions of open-end credit and closed-end credit in a manner which stripped away meaningful TILA disclosures.

## II.  STANDARD OF REVIEW

Until recently, federal courts routinely followed the pleading rules set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." However, under the United States Supreme Court opinion in *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (2007), to survive a motion to dismiss, a complaint must now contain factual allegations that sufficiently "raise a right to relief above a speculative level." *Twombly*, 127 S. Ct. at 1965.  As under *Conley*, the complaint must

3

be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Id.* at 1964-65; *see, Stephens v. Dept. of Health and Human Services*, 901 F.2d 1571, 1573 (11th Cir.1990). A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all the necessary factual allegations. *Id.*  Accordingly, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 1965.

### III.  LEGAL ARGUMENT

#### A.  THE COURT SHOULD NOT CONSIDER EXTRINGENT MATERIALS PROVIDED BY DEFENDANTS IN SUPPORT OF THE MOTION TO DISMISS UNTIL SUCH TIME AS MS. LOCICERO HAS HAD AN OPPORTUNITY TO DEVELOP A RECORD ON SAME.

*1. Defendants have Attached Improper Extringent Materials in Support of their Motion to Dismiss in Contravention of Rule 12(b)(6), Federal Rules of Civil Procedure.*

In their Motion to Dismiss, Defendants rely heavily upon a document – a so-called "borrower payment certificate" ("Completion Certificate") – in an attempt to both eviscerate the TILA claim as well as to impose a choice of law provision from another state (Motion to Dismiss – ¶¶ 3-4, 9-10, 12; Exhibit "A").  The Completion Certificate was not an attachment to the Amended Complaint filed by Ms. Locicero.

Ordinarily, a court may not consider anything beyond the face of the complaint documents attached thereto when analyzing a motion to dismiss.  *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997); *see, also,* Federal Rule of Civil Procedure 10(c).  While Ms. Locicero is mindful that the Locicero Loan Agreement references a "certificate of completion or other completion form" in the mouse-print of the first page, a studied review of the document being proffered by the Defendants actually supports the position

of Ms. Locicero that the Completion Certificate is itself evidence of the misconduct of Defendants.

According to the Completion Certificate, Ms. Locicero purportedly signed same on July 28, 2016.  According to the Amended Complaint, this was the same day that an employee of the A/C Contractor arrived at the Locicero Residence to dupe Ms. Locicero by "inspecting" the air condition unit and misrepresenting that a fictitious "FPL program" would pay for a replacement A/C Unit (Amended Complaint - ¶¶ 20-25).  The Completion Certificate also purports to contain the signature of Ms. Locicero that she "confirms that there has been a satisfactory delivery of all equipment, goods and/or services by the contractor" **on that same day**.  In the Amended Complaint, Ms. Locicero provided substantial allegations of noncompliance of the A/C Contractor with the so-called "cool-down" statutes (Amended Complaint ¶¶ 30-41).  It is undisputed the A/C Contractor could not have legally installed the A/C Unit inside three (3) business days.  It is also contrary to the compelling force of reason that the A/C Contractor actually delivered the A/C Unit on the same day that the deceptive sales pitch was made by the salesperson. Instead, according to Ms. Locicero, the A/C Unit was delivered on Saturday, July 30, 2016 – within 48 hours of the sales presentation (and well inside the three-business day cool-off period) (Amended Complaint ¶ 29).

In short, the Completion Certificate is just one of the tools that GreenSky and its business partners use to evade the law.[1]  In this action, Ms. Locicero intends to demonstrate that Defendants knew full well that home improvement contractor partners such as the A/C

---

[1] As stated in the Amended Complaint, the New Jersey Enforcement Proceeding was concluded on June 9, 2017.  In the consent decree, GreenSky agreed to change the very same business practices challenged by Ms. Locicero in this case – that loan agreements were not provided to consumers and that consumers were being deceived as to the nature of the underlying consumer transaction.

Contractor were not providing the loan agreements to consumers at the time the at-home sales were taking place and that the Completion Certificate is actually an artifice to feign compliance with the state and federal consumer disclosure laws. ***Why else would GreenSky mail a copy of the Locicero Loan Agreement to Ms. Locicero several days later if the Completion Certificate was a genuine statement of the delivery of the Locicero Loan Agreement? And why couldn't INTRUST just get Ms. Locicero's signature on the Locicero Loan Agreement in the first place if Ms. Locicero actually received the document on the date reflected on the Completion Certificate?***

 **2. *The Completion Certificate Only Creates a Rebuttal Presumption of Delivery Under TILA.***

Section 1635 of the TILA provides that a written acknowledgment of receipt of any disclosures are required under TILA creates a rebuttal presumption of delivery. *See* 15 U.S.C. §1635(c). The burden shifts to the borrower to prove non-receipt by testimony or other evidence that the disclosure was not in fact given. *Regan v. HSBC Bank,* 439 B.R. 522, 527-528 (D. Kansas 2010). *Williams v. Gelt Financial Corporation*, 237 B.R. 590, 594 (E.D. Pa. 1999); *Meyer v. Argent Mortgage Company*, 379 B.R. 529 (E.D. Pa. 2007); In re *Zohbe*, 2012 WL 12979682, (N.D. Ga March 30, 2012).

As referenced above, Ms. Locicero contends that the Completion Certificate is part of the scheme and artifice of GreenSky and its partners to purposely withhold the credit disclosures until after performance of services or delivery of goods.

This Court should not consider the legal effect of the Completion Certificate until Ms. Locicero is afforded an opportunity to rebut the presumptive delivery of disclosures. *See, In Re: Williams*, 232 B.R. 629, 640 (Bankr. E.D. Pa. 1999); *The Whiner Family Trust v. Queen,* 2004 WL 2203709 at *3, n. 3 (E.D. Pa. 2004 )[giving the plaintiff the benefit of rebuttal presumption

in ruling on defendant's rule 12(b)(6)]; *compare, Williams v. Delray Auto Mall*, 916 F. Supp. 2d

1294, 1297 (S.D. Fla 2013); *Cannon v. Metro Ford, Inc.,* 242 F.Supp.2d 1322 (S.D. Fla. 2002)

[TILA action with respect to auto finance transaction, allegations that finance company manager

physically covered up credit disclosures and retained physical control of the documents until

after plaintiff signed same sufficient to avoid dismissal]; *Cunningham v. H.A.S., Inc.*, 74

F.Supp.2d 1157 (M.D. Ala. 1999) [denial of summary judgment for dealer based on findings that

plaintiff presented sufficient evidence of dealer's intentional scheme through *inter alia* affidavits

of former employees that described how the dealership targeted low income people intentionally

covered up the terms of the deal].

In *Delray Auto Mall*, the Honorable District Court Judge Donald Graham of this Court

was presented with essentially the same argument as in the instant proceeding:  that a dealership

inflated the cash price of a vehicle to conceal a hidden finance charge and failed to provide the

mandated TILA disclosures to the consumer. *Delray Auto Mall*, 916 F. Supp. at 1295-1296. As

in the instant action, the creditor attempted to argue that an extrinsic document with respect to

disclosures barred the TILA claim.  *Id*. at 1297.

In denying the Motion to Dismiss as to the TILA cause of action, Judge Graham of this

Court stated:

> Moreover, the fact the Defendants attached the document to their Motion to
> Dismiss does not negate the fact that Williams claims that she did not receive the
> complete agreement with all the required disclosures.  As mentioned above, at the
> motion to dismiss stage.  The Court must treat the allegations of the Complaint as
> true and in the light most favorable to the Plaintiff.  *Omar ex rel. Cannon*, 34 F.
> 3d at 1247.  The Court finds that Williams has properly stated a claim under
> TILA.

> *Id*.

In the instant case, Ms. Locicero has provided clear and concise allegations of fraud on the part of GreenSky's partner, the A/C Contractor, concerning *inter alia* the existence of a fake "FPL program" to pay for the A/C Unit, as well as violations of federal and state cool-down statutes. It does not take a leap of faith to embrace the notion that Defendants and their business partners also concocted a form Completion Certificate to feign delivery of loan agreements to consumers. In short, it would be a miscarriage of justice of epic proportion to gut the claims of Ms. Locicero based on this suspect document.

### B.   INTRUST HAS VIOLATED THE TRUTH IN LENDING ACT BY FAILING TO PROVIDE THE REQUIRED CREDIT DISCLOSURES PRIOR TO CONSUMMATION.

#### 1.  *The TILA Requires the Creditor to Disclose the Cost of Credit.*

Congress has delegated to the Federal Reserve Board ("FRB") broad authority to promulgate regulations necessary to render the Truth in Lending Act effective. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 366, 93 S. Ct. 1652, 1658, 36 L.Ed. 318 (1973); 15 U.S.C. §1604(a).  Pursuant to the grant of this authority, the FRB implemented Regulation Z, 12 C.F.R. §226.1 *et sequi*.  In TILA actions, the court defers to the regulations interpreting the Act.  *Begala v. PNC Bank, Ohio, National Association,* 163 F.3d 948, 950 (6th Cir. 1998).  "We have repeatedly stated that TILA is a remedial statute and, therefore, should be given broad, liberal construction in favor of the consumer." *Id.* (citations omitted).

The TILA and Regulation Z each require the creditor in a closed-end credit transaction to make disclosures to the consumer of various items, including: the identity of the creditor; the *amount financed;* the *finance charge*; the *annual percentage rate*; the *total of payments*; and the *total sale price*.  15 U.S.C. §1638(a); 12 C.F.R. §226.18.

### 2. *Disclosures Must be Made Before the Transaction is Consummated.*

The TILA requires the creditor to make the described disclosures "before the credit is extended." 15 U.S.C. §1638(b).  In this regard, Regulation Z states: "The creditor shall make disclosures before the consummation of the transaction." 12 C.F.R. §226.17(b). "Consummation" occurs when the "consumer becomes contractually obligated on a credit transaction." 12 C.F.R. §226.2(a)(13). Whether or when a consumer becomes "contractually obligated" is an issue of state law.  Official Staff Commentary §226.2(a)(13).

These written disclosures are the "barrier between the seller and the prospective purchaser" discussed in *Mourning,* 411 U.S. at 377.  As required by the TILA and as recognized by the United States Supreme Court's use of the phrase "prospective purchaser," the disclosures must be given to a purchase who has not yet agreed to accept the credit; the consumer can only shop for the best credit terms if the consumer receives disclosures before accepting the credit terms.  The mandated language, terms and format of the written disclosures are what allow the consumer to effectively compare the terms offered by competing lenders.

### 3. *The TILA Requires Delivery of a Copy of the Written Disclosures.*

INTRUST's failure and/or refusal to *deliver* to Ms. Locicero and the other class members a copy of the loan agreements with the cost-of-credit disclosures before credit was extended and before consummation of the transaction violates the TILA and Regulation Z.  It is not enough that INTRUST mailed the written disclosures to Ms. Locicero and the class members after goods were delivered or services were performed by the home improvement contractors.  The TILA requires *delivery* of the cost-of-credit disclosures. *Delray Auto Mall*, 916 F. Supp. 2d at 1297; *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1090-93; *Polk v. Crown Auto*, 222 F.3d 691 (4th Cir. 2000);

      **a.**    **The plain language of the TILA and Regulation Z required INTRUST to provide a copy of the writing containing disclosures before credit was extended and before the transaction was consummated.**

Regulation Z prescribes the form in which a creditor shall disclose the items which must be disclosed pursuant to 15 U.S.C. §1638(a):

      **SECTION 226.17 — General Disclosure Requirements**

      (a)    The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, **in a form that the consumer may keep**.

                          \*      \*      \*

12 C.F.R. §226.17(a)(1) (emphasis supplied).  Thus, a creditor's disclosures must satisfy a two-prong test: (1) disclosures must be *clear, conspicuous and in writing*; and (2) disclosures must be made a *in a form that the consumer may keep.*

 INTRUST did not satisfy the second prong of the test.  Because Regulation Z requires disclosures to be made "in a form that the consumer may keep," it clearly contemplates that the written disclosures must be *delivered* to be effective.  INTRUST failed and/or refused to deliver to plaintiff the disclosures before consummation of the transaction as required by 12 C.F.R. §226.17(b).

It is anticipated that INTRUST will argue that it satisfied the disclosure requirements of 12 C.F.R. §226.17(a)(1) because plaintiff signed some sort acknowledgement in the form of the Completion Certificate.  As referenced above, 15 U.S.C. §1365(c) provides that such an acknowledgment is merely a presumption (one which Ms. Locicero is confident she will overcome). By such an argument, INTRUST will claim that there can be disclosure without delivery.  Plain language aside, as a matter of statutory construction, INTRUST's argument must fail.

To support its claim that it satisfied Regulation Z, INTRUST argues that because the written disclosures in fact *existed* in tangible form by way of a finance agreement, the disclosures were "in a form that the consumer may keep," overlooking the fact that they were not delivered prior to consummation. However, without the requirement of delivery, the quoted language is redundant as the same subsection of Regulation Z clearly requires that disclosures must *exist* — *i.e.,* disclosures must be clear, conspicuous and "in writing".

It is a cardinal rule of statutory construction that significance and effect should, if possible, be accorded every part of a statute. *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 333, 59 S.Ct. 191, 200, 83 L.Ed. 195 (1938) ("Where, as here, the language is susceptible of a construction which preserves the usefulness of the section, the judicial duty rests upon this Court to give expression to the intendment of the law").   In order to give full effect to all words used in 12 C.F.R. §226.17(a)(1), the provision must be read to require *delivery* of the written TILA disclosures.  Because INTRUST did not deliver the disclosures before the extension of credit or before consummation of the transaction, INTRUST violated the TILA.

**b.  Delivery of the written disclosures prior to consummation of the transaction is consistent with the purposes of the TILA.**

A principal reason for enactment of the TILA was "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. §1601(a).  "The Truth in Lending Act reflects a transition in congressional policy from a philosophy of `Let the buyer beware' to one of `Let the seller disclose.'" *Mourning,* 411 U.S. at 378, 93 S.Ct. at 1664. "The purpose of disclosure is clearly to give the borrower an opportunity to do some comparative shopping for credit terms."  *Wachtel v. West,* 476 F.2d 1062, 1064 (6th Cir.1973), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973).  To achieve these goals, 12 C.F.R.

11

§226.17(a)(1) must be read to require *delivery* of the written TILA disclosures prior to consummation of the transaction.

INTRUST's failure to deliver the written disclosures to the consumer prior to consummation of the transaction hindered the consumer's ability to shop credit terms and to avoid the uninformed use of credit.  Thus, INTRUST violated the TILA.

## C.   THE CREDIT SERVICE FEE WAS A HIDDEN FINANCE CHARGE THAT INTRUST FAILED TO DISCLOSE IN VIOLATION OF TILA.

### 1.   *The Credit Service Fee was a Finance Charge to be Paid Indirectly by the Consumer*

In her Amended Complaint, Ms. Locicero alleges that GreenSky— an unlicensed arranger of credit — charged an undisclosed fee ("Credit Service Fee") which was added to the cash price of the A/C Unit to compensate GreenSky for arranging for the credit represented by the Locicero Loan Agreement (Amended Complaint - ¶¶ 57-63).  As the Credit Service Fee was actually a hidden finance charge, INTRUST should have disclosed same as part of the "finance charge" in the Locicero Loan Agreement.

TILA defines the "finance charge" as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and opposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. §1605(a). Regulation Z provides:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident or condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. §226.4(a)

Further, Regulation Z provides the term "finance charge" includes "[c]harges imposed on a creditor or by another person for purchasing or accepting a consumer's obligation, if the

consumer is required to pay in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation." *Id.*, §226.4(b)(6).

### 2. The Credit Service Fee was Separately Imposed

According to the Amended Complaint, the Credit Service Fee was a fee that would not have been charged in a "cash only" transaction with the merchant (Amended Complaint - ¶61). In their Motion to Dismiss, Defendants imply that the Credit Service Fee was part of the "cost of doing business" of their business partner, the A/C Contractor (Motion to Dismiss – p.6).

"Cost of doing business" charges are generally excluded from the TILA disclosure requirements by Regulation Z:

> *Costs of Doing Business.* Charges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such cost into consideration in determining the interest rate to be charged by the cash price of the property or services sold. ***However, if the creditor separately imposes a charge on the consumer to cover certain costs, the charge is a finance charge if it otherwise meets the definition.*** For example:

> a discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not separately imposed upon the consumer.

> §1026.4(4)(a)2, Official Interpretations of Regulation Z (emphasis added)

The courts have variously interpreted "separately imposed." For example, one court held, without discussion, that a discount was not separately imposed if it was included in the purchase price. *See, Sampson v. Mercury Fin. Co.*, 1996 WL 1057530 (M.D. Ala. 1996). In contrast, the Seventh Circuit explained, however, in an extensive analysis, this practice would allow unscrupulous businesses to evade TILA "by hiding a portion of the finance charge in the cash price of the vehicle." *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 933, n.8 (7th Cir. 1998);

13

*Joseph v. Excellence Auto Trade, LLC*, 2017 WL 115178 (E.D. N.Y. Feb. 10, 2017); see also,

*Delray Auto Mall*, 916 F.Supp.2d at 1297. [dealer hid finance charge in vehicle price]. For this

reason, the position of INTRUST would contravene *Mourning* and the Supreme Court's directive

that creditors not be allowed to contravene TILA by burying the cost of credit in the price of

goods. *See, also, Irby-Greene v. M.O.R., Inc.*, 79 F.Supp.2d 630, 633 (E.D. Va. 2000).

### 3.  *The Credit Service Fee Would Not Be Incurred in a Cash Transaction*

Alternatively, a finance charge should be considered "separately imposed" on a credit

consumer "when it is imposed in credit transactions but not in cash transactions." *Walker*, 155

F.3d at 934; *see, also, Irby-Greene*, 79 F.Supp.2d at 633 [cost is "separately imposed" if seller,

to cover costs, would have charged a credit consumer a higher price than a cash customer].

Regulation Z supports this analysis, providing that a charge imposed directly, or indirectly, by a

creditor is not a finance charge, if it is "imposed uniformly in both cash and credit transactions."

12 C.F.R. §226.4(a).  As Ms. Locicero has alleged that the Credit Service Fee would not have

been charged in a cash transaction, this Court must accept the allegations as true for purposes of

the Motion to Dismiss.

### D.  BY PROVIDING A CREDIT CARD DEVICE IN THE FORM OF THE GREENSKY SHOPPING PASS, INTRUST HAS SUBJECTED ITSELF TO ALL THE REQUIREMENTS FOR AN OPEN-END TRANSACTION, INCLUDING THE REQUIRED ACCOUNT OPENING DISCLOSURES UNDER 15 U.S.C. §1637(a), COMPLIANCE WITH THE UNDERWRITING REQUIREMENTS OF 15 U.S.C. §1665e, AND PROVIDING THE REQUIRED PERIODIC STATEMENTS AS REQUIRED UNDER 15 U.S.C. §1637(b).

### 1.  *INTRUST Violated TILA When it Chose to Use a "Hybrid" Credit Agreement*

Generally, there are two types of consumer credit transactions regulated by TILA: open-

end credit plans and closed-end credit plans. The term "open-end credit plan" denotes a plan

"under which the creditor reasonably contemplates repeated transactions, which prescribes the

14

terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."  15 U.S.C. §1602(i). Closed-end credit plans, on the other hand, contemplate a single transaction, where the "finance charge is divided into the term of the loan and incorporated into the time payments and thus the rate's computable by the consumer from the time he receives his first billing." *Goldman v. First Nat'l Bank of Chicago,* 532 F.2d 10, 19 (7th Cir. 1976). A credit card account is an example of an open-end consumer credit plan. *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524, at *4 (E.D.N.Y. Jan. 25, 2008).

In their Motion to Dismiss, Defendants argue that the Locicero Loan Agreement was a closed-end credit transaction as "it contemplates a single transaction to finance her A/C Unit." (Motion to Dismiss – p.7). The Defendants, however, fail to recognize that the GreenSky Shopping Pass was in fact a "credit card" subjecting INTRUST to the requirements of 15 U.S.C. §1665(e) of the "Credit Card Accountability and Disclosure Act of 2008" or the "Credit Card Act" ("Credit Card Act"), including the protections against imprudent lending.

### 2. The GreenSky Shopping Pass is a "Credit Card" Under TILA

A "credit card" is statutorily defined as "any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor or services on credit." 15 U.S.C. §1602(l). Regulation Z also requires that the card be one that "may be used from time to time" to obtain credit. Regulation Z §1026.2(a)(15).

Credit cards are not just pieces of plastic, but can come in other guises, as long as they are a "device" of some sort which may be used from time to time to obtain credit.  Loan agreements that contain a pre-printed form with an account number that can be used to purchase goods on credit constitute a "credit card" under TILA. *Munoz v. 7th Avenue, Inc.*, 2004 WL

1593906 (N.D. Ill. July 15, 2004) [rejecting argument that credit card had to meet the standards defined by the American National Standards Institute – such as a certain thickness, having a magnetic stripe, and using a 16-digit account number – in order to be considered a credit card].

The GreenSky Shopping Pass provided to Ms. Locicero is reproduced for the Court's ready review as follows:

 

(Amended Complaint - ¶ 70; Ex. D)

The GreenSky Shopping Pass had all the attributes of a credit card including an expiration date, an account number, and electronic scan bar code. Moreover, Paragraph 1 of the Locicero Loan Agreement actually contemplates purchases of goods or services over a period of time (Locicero Loan Agreement - ¶ 1; Amended Complaint - ¶ 6). The claim of Defendants that the Locicero Loan Agreement contemplates a "single transaction" is – in a word – bogus. Even the instructions provided to Ms. Locicero demonstrated the intended open-end credit contemplated by Defendants:

- Your Loan Agreement is included with this packet and contains the full terms and conditions of your loan. In addition, you can get current account info, enroll in online payments, and access your Loan Agreement online by enrolling in the GreenSky® customer portal at greenskyonline.com.

- When you agree to the terms of the Loan Agreement and are ready to make your purchase, give your account number, expiration date, and photo ID to your contractor. Use of the Shopping Pass or the associated Installment Loan to make a purchase constitutes acceptance of the terms of the loan.

16

> • Your Shopping Pass is used to access your credit limit. **Please protect it like any other financial device**. Contact us immediately at 866-936-0602 if you lose your Shopping Pass.

(Amended Complaint - ¶ 75; Ex. C)<br>(emphasis added)

In the GreenSky Shopping Pass Instructions, Defendants represented the following with respect to the ability of Ms. Locicero and other persons similarly situated to contest an authorized transaction:

> Standard MaserCard [sic] rules apply.  Any unauthorized transactions must be report [sic] to GreenSky® within 60 days.

(misspelling in original).

(Amended Complaint - ¶ 75; Ex. C)

The artifice of the "Shopping Pass" was designed by Defendants to allow Defendants to assert that the extension of credit is in the nature of an "open-end" loan in the manner of a credit card so as to limit the ability of consumers to dispute unauthorized transactions by requiring consumers to follow the notice requirements of 15 U.S.C. §§1601-1666j, known more commonly as the "Fair Credit Billing Act" (Amended Complaint - ¶ 76).  If a consumer like Ms. Locicero failed to notify INTRUST that there was an unauthorized credit transaction, the Defendants would basically hide behind the open-end credit provisions of their loan agreements and tell the hapless consumer: "too bad, you have to pay."

This business model is profoundly clever.  But as INTRUST chose to issue a credit card to Ms. Locicero, INTRUST failed to comply with the TILA requirements for credit cards, including:

> ● the disclosure of all items required under Regulation Z §1026.60(a)(2) at the time of the opening of the credit card account;

17

● the adherence to underwriting requirements, including a general

requirement applicable to all consumers, that an issuer may not open a credit card

account unless the issuer considers the ability of the consumer to make the

required minimum payments. 15 U.S.C. §1665e; Regulation Z §1026.51(a)(1)(i);

and

● the transmission of periodic statements with the disclosures that are

required for open-end credit as mandated by 15 U.S.C. §1637(b) and Regulation

Z §1026.4(b).

### E.   A CLAIM FOR DECLARATORY RELIEF UNDER 28 U.S.C. §2201 WAS PROPERLY PLED TO OBTAIN AN ADJUDICATION THAT THE LOANS OF MS. LOCICERO AND THE OTHER CLASS MEMBERS ARE UNENFORCEABLE.

In Count II of her Amended Complaint, Ms. Locicero seeks a declaration that the

extensions of credit arranged by GreenSky are void by operation of law. In response to this well-

pled claim, Defendants argue that the declaratory relief claim was somehow duplicative of the

relief sought under the statutory CSOA claim under Count IV (Motion to Dismiss – p.7).

Defendants, however, have also overlooked that Defendants are at the same time seeking to

dismiss the CSOA claim.

As Ms. Locicero detailed in her Amended Complaint, GreenSky is no stranger to

litigation challenging its practices. As a skilled litigant, GreenSky will adopt whatever legal

argument will best help it evade the consequences of its credit-arranger business. *See, e.g.,*

*Alfortish v. GreenSky, LLC,* 2017 WL 699830 (.E.D.La., Feb. 22, 2017) [putative class action

stayed pending arbitration]; *Bentley v. GreenSky Trade Credit, LLC,* 156 F.Supp.3d 274 (D.

Conn. Dec. 30, 2015).

The *Bentley* case is illustrative of what may unfold in the instant proceeding as the case progresses. In *Bentley*, a homeowner – much like Ms. Locicero – argued that GreenSky had created a loan in her name without providing TILA disclosures to finance home improvements. In order to defeat a claim under TILA, GreenSky argued that the transaction was not consummated. *Id.* at 287. In accepting the argument of GreenSky, the District Court of Connecticut stated:

> Because the GreenSky loan was never consummated, the Court find that Ms. Bentley's TILA claim against the bank is futile. This result does not allow defendants to benefit from the wrongdoing improperly, as Ms. Bentley suggests, but rather indicates that TILA does not provide a remedy for this type of factual scenario.

> *Id.* at 288.

Presently, Defendants are arguing that the Locicero Loan was consummated. Once Defendants make their Hobson's choice, the Defendants could potentially persuade this Court that the loan agreements of Ms. Locicero and other persons similarly situated were not "consummated" so that there was not a TILA remedy. In that event, it is in the interest of justice that the Court make a determination under the Declaratory Judgment Act that Ms. Locicero and the other putative class members owe nothing to INTRUST as a matter of law.

## F.   MS. LOCICERO HAS STATED A CLAIM FOR UNJUST ENRICHMENT AS TO BOTH DEFENDANTS.

### 1.  As to INTRUST

The primary argument of INTRUST challenging the unjust enrichment claim is that the "remedy is not available against INTRUST under Florida law because there is an express contract between the parties." (Motion to Dismiss – p.8). This precise argument was rejected by this Court in *Altman v. Lifespace Communities, Inc.,* 2012 WL 414826 (S.D.Fla. Feb. 8, 2012) (Marra, J.).

In *Altman*, the defendant moved to dismiss plaintiff's unjust enrichment claims on the grounds that they "may not pursue the equitable theory of unjust enrichment" because "there is an express contract in this matter." This Court rejected the defendant's argument because under the Federal Rule of Civil Procedure 8(d)(2), plaintiffs may plead inconsistent or alternative theories of relief. *Id.* at *5. Thus, this Court concluded that "[a]t the pleading stage, plaintiffs are not precluded from pleading claims for both breach of contract and unjust enrichment." *Id. See, also, Ninghai Genius Child Product Co. Ltd. v. Cool Pak, Inc.*, 2012 WL 1203821, *3 (S.D.Fla. April 11, 2012) (Marra, J.) ["plaintiff is not prevented from pursuing the alternative claims of breach of contract, unjust enrichment, and promissory estoppel in separate counts"]; *Martorella v. Deutsche Bank Natl. Trust Co.*, 931 F.Supp.2d 1218 (S.D.Fla. 2013) (Marra, J.).

### 2. As to GreenSky

When viewed with the facts most favorable to Plaintiff, GreenSky was paid the Credit Service Fee – in an amount not presently known to Ms. Locicero – for an arrangement of the credit represented by the Locicero Loan Agreement (Amended Complaint - ¶ 60). Ms. Locicero contends in her Amended Complaint that the amount paid to GreenSky constitutes an unlawful fee under the CSOA. As will be fully argued below, whether Ms. Locicero paid the credit service fee either directly or indirectly to GreenSky is irrelevant. For if this Court determines that Ms. Locicero is obligated to pay monies under the Locicero Loan Agreement, GreenSky should have to disgorge such monies.

With respect to the appropriateness of a class action for unjust enrichment, Defendants commented in a footnote that the Eleventh Circuit has cautioned that unjust enrichment claims are rarely suitable for class-wide resolution in *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2014) [Motion to Dismiss – p.9, footnote 6]. Ms. Locicero feels compelled to respond

to this early attack on certification directly and not in a footnote. When a law-breaking business acts the same way as to class members, individualized issues are absent and class certification of an unjust enrichment claim is appropriate. *Williams v. Wells Fargo, N.A.*, 280 F.R.D. 665, 674 (S.D.Fla. 2012) (Scola, J.); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659 (S.D.Fla. 2010) (Moore, J.); *In Re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697-98 (S.D. Fla. 2004) (Seitz, J.); *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504 (Scola, J.). As such, Ms. Locicero believes that disgorgement is the most efficient way to make class members whole.

### G.  MS. LOCICERO HAS PROPERLY PLED A CLAIM UNDER THE CSOA AS A RESULT OF THE FAILURE OF GREENSKY TO COMPLY WITH THE DISCLOSURE AND BONDING REQUIREMENTS OF CHAPTER 817, FLA. STAT.

#### 1.  *The Choice of Law Provision in the Locicero Loan Agreement Does Not Bar Claims Against GreenSky for Violation of the CSOA.*

In their Motion to Dismiss, Defendants argue that the Locicero Loan Agreement contains a choice of law provision for the State of Kansas so that any claim based on Florida state law should be dismissed. Ms. Locicero believes that she has provided a comprehensive argument as to why the Court should not decide the choice of law issue at the present time. Among other things, if Ms. Locicero did not assent to the terms of the Locicero Loan Agreement, the choice of law provision is irrelevant.

Assuming for purposes of argument that the Locicero Loan Agreement represents an enforceable obligation between Ms. Locicero and INTRUST, GreenSky cannot avail itself of the choice of law provision. A choice of law clause is a contractual right and cannot be invoked by one who is not a party to the contract to which it appears. See, e.g., *Britton v. Co-Op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Parcor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996).

Even if GreenSky could avail itself of the choice of law provision, Florida law does not enforce choice of law provisions if the law of the chosen forum contravenes public policy. *See, e.g., Mazzoni Farms, Inc. v. E.I. DuPont Nemours Company,* 761 So.2d 306, 311 (Fla. 2004). The Florida Legislature enacted the CSOA to curtail unfair and deceptive practices by *inter alia* credit arrangers that are otherwise not licensed by the State of Florida. If this Court determines that Kansas law applies to the activities of businesses such as GreenSky, then consumers such as Ms. Locicero have absolutely no protection against the misconduct described in the instant action. [2]

### 2. The Activities of GreenSky – in Arranging for Credit -- Fall Squarely Within the Ambit of the CSOA.

Most states have passed consumer statutes – often termed as a "credit service organizations act" – to deal with abuses by credit service organizations and businesses that arrange for credit for consumers. *See, e.g.,* 815 Ill. Comp. Stat. §§605/1, *et seq.*; Michigan Comp. Laws §§445.1821 *et seq.*; Mass. Gen. Laws Chp.93, §§68A-68E, MN Stat. Title 9-A §§10-101 - 10-401; Md. Code Ann. Comp. Law §14-1901 *et seq.* The state statutes typically cover organizations that assist or offer to assist consumers in obtaining extensions of credit. As a result, loan brokers and credit card finders must comply with state statutes, including registration, bonding and the right to cancel requirements. *See, e.g., In re Bell,* 309 B.R. 139 (Bankr. E.D. Pa. 2004) [mortgage loan broker meets Pennsylvania definition of "credit service organization"], *reconsideration granted in part on other grounds,* 314 B.R. 54 (Bankr. E.D. Pa. 2004)]; *Lobick v. Rite Money Ltd.,* 378 F.3d 433 (5th Cir. 2004) [state credit services law covers loan broker].

---

[2] While Kansas has a comparable credit service organizations act under K.S.A §50-116, the application of that statute is restricted to businesses operating in Kansas.

The Florida CSOA tracks the other state statutes with respect to the entities regulated and the requirements on credit service businesses. As defined by the statute, a business such as GreenSky means:

> (2)(a) "Credit service organization" means any person who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can or will sell, provide, or perform, in return for the payment of money or other valuable consideration, any of the following services:
> 1.  Improving a buyer's credit record, history, or rating;
> 2.  **Obtaining an extension of credit for a buyer**; or
> 3.  Providing advice or assistance to a buyer with regard to the services described in either subparagraph 1. or subparagraph 2.

Fla. Stat. §817.7001(2)(a)
(emphasis supplied)

In their Motion to Dismiss, Defendants assert that GreenSky does not meet the definition of a "credit service organization." In reviewing each element of the definition of a "credit service organization" under §817.7001(2)(a), Ms. Locicero has properly established for pleading purposes that GreenSky is within the ambit of the CSOA:

**a.  "with respect to the extension of credit by others"**

A copy of the Locicero Loan Agreement is attached to the Amended Complaint (Amended Complaint – Exhibit "B"). The loan agreement purports to be between Ms. Locicero and INTRUST. Accordingly, Ms. Locicero has pleaded the first element involving the extension of credit from a third party.

**b.  "sells or provides or represents"**

The Florida Legislature described the scope of activities of a credit service organization in the disjunctive. There is no requirement as suggested by GreenSky that GreenSky "represent" persons such as Ms. Locicero or that GreenSky somehow hold itself out to consumers as a business that can help in obtaining the

23

extension of credit. All that is required is that GreenSky sell, provide or perform the service. Accordingly, the statutory element has been pleaded.

**c.  "for money or other valuable consideration"**

Ms. Locicero has alleged that GreenSky was paid a fee for arranging the credit represented by the Locicero Loan Agreement (Amended Complaint - ¶60). This element has been established.

**d.  "obtaining the extension of credit for a buyer"**

In the Motion to Dismiss, Defendants incorrectly state that "plaintiff does not allege that GreenSky obtained an extension of credit for her" (Motion to Dismiss – p.11).  The Amended Complaint demonstrates otherwise (Amended Complaint - ¶85).

### 3.  The CSOA Does Not Require Direct Payment by a Consumer to Place a Business Such as GreenSky Within the Ambit of the Act.

A studied review of the Motion to Dismiss demonstrates that GreenSky believes that it is not a "credit service organization" as it did not receive a fee directly from Ms. Locicero and persons like her. The CSOA, like other credit service organization acts, however, applies to organizations that provide their services "in return for the payment of money and other valuable consideration."  Payment by a lender out of the proceeds of a loan arranged by the credit service organization satisfies this requirement. The consumer need not make the payment directly to the credit service organization. *See, Md. Comm. of Fin. Regulation v. CashCall, Inc.*, 139 A.3d 990 (Md. 2016) [requirement of payment of fee met where defendant arranged loan from bank, then immediately bought the loan from bank which charged arrangement fee]; *Fugette v. Jackson-Hewitt, Inc.,* 347 S.W.3d 81, 86-87 (Mo.Ct. App. 2011); *Harper v. Jackson-Hewitt, Inc.,* 706 S.E. 2d 63, 72-74 (W.Va. 2010) [tax preparer that arranged refund anticipation loan for

consumer is credit service organization even though consumer paid it only indirectly]; *Hunter v. Jackson-Hewitt, Inc.,* 2007 WL 3376841 (S.D. W. Va. Nov. 6, 2007) [denying motion to dismiss claim under West Virginia credit service organization law against tax preparer who arranged refund anticipation loan].

Ms. Locicero is unaware of any published decision with respect to the CSOA that addresses whether a credit service business must receive a direct fee in order to be liable under the CSOA. The recent decision of *CashCall, Inc. v. Md. Comm. of Fin. Regulation,* 448 Md. 412, 139 A. 3$^d$ 990 (2016), however, provides compelling authority that a credit arranger can be held liable under the comparable Maryland statute, Md. Code. Ann. Com. Law §14-1901 ("MCSBA"), when it did not receive a fee directly from a consumer. *CashCall* involved a payday lender, CashCall, which entered into partnerships with third-party banks that charged consumers origination fees for payday loans. Similar to INTRUST in this proceeding, the banks paid CashCall royalty fees of $5.00 to $72.22 per loan depending on the amount disbursed and the financial institution. *Id.*

In *CashCall*, the Maryland Court of Appeals ruled that the definition of "the payment of money or other valuable consideration" did not require that "reciprocation, compensation or repayment" be made directly by the consumer. *Id.* at 428. The Court further emphasized that the MCSBA applied to businesses such as CashCall "whose sole business is to arrange loans for Maryland consumers."  *Id.* at 432.

The Eleventh Circuit has directed that courts must construe consumer protection statutes broadly in favor of consumers. *Agrelo v. Affinity Management Services, LLC*, 841 F.3d 944 (11th Cir. 2016). Broadly applying the CSOA to the matter at bar, Ms. Locicero and the other members of the class have been charged a fee for credit services activities covered by the statute.

### 4. *INTRUST is liable for the conduct of GreenSky.*

In their Motion to Dismiss, Defendants correctly state that INTRUST would be exempt as a national bank under the CSOA (Motion to Dismiss – p.12). However, with respect to the claims under the CSOA, INTRUST has derivative liability for the conduct of its business partners, including GreenSky, under both the terms of the Locicero Loan Agreement (Amended Complaint - ¶ 97), and the FTC Holder Rule (Amended Complaint - ¶ 98).

### H.  MS. LOCICERO HAS PROPERLY PLED A VIOLATION OF THE FCCPA FOR THE ATTEMPT BY DEFENDANTS TO COLLECT MONIES FROM MS. LOCICERO AND OTHER PERSONS SIMILARLY SITUATED WHEN DEFENDANTS KNEW THAT SUCH AGREEMENTS WERE UNENFORCEABLE.

With respect to the claims under the FCCPA, the Defendants have again reiterated their arguments based on Kansas choice of law provision. Accordingly, Ms. Locicero will stand on her argument as to same.

The only other issue raised by Defendants in support of dismissal of the FCCPA claim is that "Plaintiff has not pleaded sufficient facts that could demonstrate that Defendants had actual knowledge of the debts' invalidity because the debt is valid." (Motion to Dismiss – p.p. 12-13). With all due respect to Defendants, Ms. Locicero consumed twenty pages of the Amended Complaint detailing the misconduct of GreenSky and its business partners with respect to the fraudulent loan scam.

To paraphrase the Bard, Defendants "doth protest too much methinks."

### IV.  CONCLUSION

This case is more than just a woman trying to avoid paying for her air conditioner. Rather, it is a challenge to the predatory practices of GreenSky extracting undisclosed fees from persons who were duped by its business partners. The wrongdoing is magnified by the involvement of national banks and other lenders who cloak GreenSky with an image of

legitimacy.  Federal and state law require transparency and disclosure with respect to the fees charged in consumer transactions.  Defendants have purposefully failed to provide the mandated disclosures in order to profit from unsuspecting consumers.

Ms. Locicero trusts the Court will see through the artifices and devices of the Defendants - including the Completion Certificate and the GreenSky Shopping Pass – and deny the motion to dismiss the Amended Complaint in its entirety.

If, however, the Court finds any aspect of the pleading of Ms. Locicero is deficient, Ms. Locicero will respectfully request an opportunity to cure the deficiency through a further pleading.

## V. REQUEST FOR ORAL ARGUMENT

Plaintiff, Francisca D. Locicero, an individual, pursuant to Local Rule 7(b)(2), Local Rules of the United States District Court, Southern District of Florida, respectfully requests that this Court grant oral argument with respect to the motion to dismiss the Amended Complaint. Plaintiff believes that oral argument will be helpful to the Court as the subject matter of this proceeding involves a class action under diverse federal and state protection statutes, all which involve a fair level of complexity that may require further explanation by counsel.  Plaintiff estimates that forty-five (45) minutes will be adequate for oral argument for the respective parties.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660
(954) 763-8607 (FAX)
Email: rphyu@aol.com;
rwmurphy@lawfirmmurphy.com

27

KATHLEEN P. HYLAND
*Admitted pro hac vice*
Hyland Law Firm, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 777-8536
(410) 777-8237 (FAX)
Email: kat@lawhyland.com

COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on December 8th, 2017 on J. Anthony Love, Esquire, and Barry Goheen, Esquire, King & Spalding, LLP, 1180 Peachtree Street, N.E., Atlanta, Georgia 30309, telephone: (404) 572-4600, email: tlove@kslaw.com, bgoheen@kslaw.com, *counsel for Defendants*, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/ *Robert W. Murphy*
Attorney