UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 17-61484-CIV-GAYLES

FRANCISCA D. LOCICERO, et al.,

        Plaintiffs,

vs.

INTRUST BANK, N.A., et al.,

        Defendants.
_____/

## **ORDER GRANTING IN PART MOTION TO DISMISS**

THIS MATTER is before the Court on the Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint [DE 35]. Plaintiff's putative class action complaint arises from an alleged loan generation scheme for financing expensive home improvement products, such as air conditioners. According to the Amended Complaint, Defendant GreenSky, LLC ("GreenSky") arranges and brokers the loans, while Defendant Intrust Bank, N.A. ("Intrust") is the actual lender. The Amended Complaint ("complaint") alleges five causes of action: (1) violation of the Truth in Lending Act (TILA) by Intrust; (2) declaratory relief; (3) restitution and unjust enrichment; (4) violation of the Florida Credit Service Organization Act; and (5) violation of the Florida Consumer Collection Practices Act. Defendants' motion seeks to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' motion is granted in part and denied in part and Plaintiff is granted leave to replead.

## I. Allegations in the Amended Complaint[1]

*Plaintiff's Agreement with Fluid Air*

Plaintiff owns a home in Broward County, Florida, where she maintains her residence. On or about July 24, 2016, Plaintiff received an unsolicited telephone call on her cell phone from someone she believed was a salesperson for Fluid Air Concepts ("Fluid Air") concerning a "sales program" to help low income people save on energy costs. According to Plaintiff, the caller falsely told Plaintiff that she could save money by upgrading her air conditioning system using a Florida Power and Light (FPL) Program. In reality and unbeknownst to Plaintiff at the time, no such program existed. Plaintiff agreed to meet the salesperson.

On July 28, 2016, an employee or agent of Fluid Air came to Plaintiff's home. The Fluid Air salesperson "inspected" Plaintiff's air conditioning unit and represented to Plaintiff that the FPL Program would provide financial assistance to Plaintiff if she changed out her air conditioner for a new energy efficient unit. The Fluid Air representative falsely told Plaintiff that, under the FPL Program, Plaintiff would have no out-of-pocket costs when, in fact, Fluid Air intended to create a loan in Plaintiff's name to finance the purchase of the air conditioner. Plaintiff did not consent to the loan.

Under the belief that an FPL Program existed, Plaintiff signed a document titled "Agreement for Change Out in Service" ("Change Out Agreement"), which is attached to the complaint as

---

[1]Plaintiff's amended complaint contains lengthy allegations about GreenSky's home solicitation and loan generation business and also contains class action allegations. Because none of those allegations are directly relevant to the issues raised by the motion to dismiss, those allegations are not set out here.

2

Exhibit A.[2] The Change Out Agreement indicates that the "Cash Value of Equipment" is $8,000.00. It further states that all installation and other charges have been waived. On July 30, 2016, within 48 hours of signing the Change Out Agreement, Fluid Air replaced Plaintiff's air conditioner unit with a new unit, without obtaining a permit and without complying with applicable code requirements. The Change Out Agreement did not contain the right to cancel clause required by Florida Statute § 501.031(2) or the right to cancel clauses required by 16 C.F.R. § 429.1.[3]

*The Loan Agreement*

Several days after the new air conditioning unit was installed at her home, Plaintiff received a letter from Defendant GreenSky informing Plaintiff of an $8,000.00 loan in her name.[4] Included with the letter was a document titled "GreenSky Installment Loan Agreement" ("Loan Agreement").

---

[2] In their Motion to Dismiss, Defendants contend that Plaintiff also signed another document at that time, the Borrower Payment Certificate, which acknowledged receipt of the GreenSky Installment Loan Agreement and which stated that Plaintiff agreed to be legally bound by the terms and conditions of the GreenSky Installment Loan Agreement. Defendants attach a copy of the Borrower Payment Certificate to their Motion to Dismiss and rely on its contents in support of the Motion to Dismiss. The Court, however, will not consider the Borrower Payment Certificate at this stage of the proceedings because it was not attached to the complaint, was not referred to in the complaint, and it is not clear that the contents of the document are not in dispute. *See Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("Ordinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss. . . .This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." (citation omitted)).

[3] While the complaint alleges these violations, it does not contain causes of action under either the Florida Statute or the federal regulations.

[4] The complaint does not clearly set out the relationship between Fluid Air and Green Sky. However, Plaintiff alleges that Defendant GreenSky uses merchants, including Fluid Air, to finance home improvement products, such as air conditioning units, through high pressure in-home solicitations.

The letter and its enclosures are attached to the complaint as Exhibit B and the Loan Agreement is also attached separately as Exhibit C. Plaintiff never signed the Loan Agreement and did not agree to any of the terms and provisions of the Loan Agreement. Fluid Air never disclosed the provisions of the Loan Agreement to Plaintiff. Despite the fact that Plaintiff never signed or agreed to enter into a contract for the extension of credit with GreenSky or Intrust, Defendants have collected or attempted to collect monies from Plaintiff.

Pursuant to the terms of the Loan Agreement, Defendant Intrust extended credit to Plaintiff in the amount of $8,000.00. The TILA disclosure in the Loan Agreement lists $8,000.00 as the "Amount Financed." The Loan Agreement also states that $8,000.00 was paid to Fluid Air. Plaintiff alleges that this representation was false because GreenSky received the $8,000.00 and paid only a portion of that to Fluid Air. Because GreenSky kept a portion of the loan proceeds, Plaintiff alleges that the "Amount Financed" set out in the TILA disclosure contained an undisclosed fee paid to GreenSky ("Credit Service Fee"). The Credit Service Fee would not have been charged in a cash only transaction. As a result, the Credit Service Fee constitutes an undisclosed finance charge.

Plaintiff alleges that the Loan Agreement appears to contemplate both a "closed-end credit transaction" and an "open-end credit transaction." The requirements for closed-end and open-end credit transactions differ. An open-end credit transaction provides for multiple purchases within a certain time period, i.e., a credit card, whereas a closed-end credit transaction involves a single extension of credit. The Loan Agreement includes a "Shopping Pass" which, according to its terms, had attributes of a credit card, including an account number, an expiration date, a bar code, and a "CVV Number." Plaintiff maintains that, as a result of the Shopping Pass's credit-card like features,

Intrust was required to comply with the Credit Card Accountability and Disclosure Act of 2009 and it has not.

### *GreenSky and the Credit Service Organization Act*

Plaintiff alleges that GreenSky acted as a credit service organization, as that term is defined in Florida's Credit Service Organization Act ("CSOA"). Specifically, GreenSky, in return for money, sold, provided, and performed the procurement and obtaining of an extension of credit for Plaintiff as a buyer. However, GreenSky has not complied with the requirements of the statute.

### *Plaintiff's Causes of Action*

As set out above, Plaintiff alleges five causes of action. Count I against Intrust alleges that Intrust violated TILA by: (1) failing to provide all material disclosures required by TILA, 15 U.S.C. § 1601, *et seq.*, and Regulation Z, 12 C.F.R. § 226.18, in closed-end credit transactions and (2) failing to comply with the requirements of TILA for open-end credit transactions. Count II, against both Defendants, seeks a declaratory judgment that GreenSky has not complied with the Florida CSOA and that the Loan Agreement was never consummated and, therefore, is unenforceable. Count III is a claim for restitution and unjust enrichment against both Defendants. Count IV alleges a violation of the Florida CSOA, Fla. Stat. § 817.7001, *et seq.*, against both Defendants. Count V, against both Defendants, claims violation of the Florida Consumer Credit Protection Act, Fla. Stat. § 559.55, *et seq.*, ("FCCPA"). Plaintiff seeks a declaration that all extensions of credit arranged by GreenSky are void as a matter of law, statutory damages from Instrust under TILA, and actual and punitive damages under the CSOA and FCCPA. Defendants have moved to dismiss all claims.

## II. Motion To Dismiss Standard

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## III. Discussion

As previously stated, Defendants seek to dismiss Plaintiff's entire complaint. Defendants raise three main reasons for dismissal: (1) any fee paid by Intrust to GreenSky was not charged to Plaintiff and, therefore, was not a finance charge required to be disclosed by TILA; (2) Plaintiff is subject to the terms of the Loan Agreement, which include a Kansas choice-of-law provision, the application of which requires dismissal of the two Florida statutory causes of action, the CSOA and FCCPA claims; and (3) Plaintiff's common law claims do not state claims against the Defendants. The Court will address each cause of action separately.

### A. *Plaintiff's TILA Claim Against Intrust is Dismissed in Part*

Plaintiff's TILA claim alleges that Intrust violated TILA in multiple ways. To the extent Intrust and Plaintiff entered into a closed-end credit transaction, Plaintiff maintains that Intrust violated TILA by (i) failing to accurately and properly disclose the annual percentage rate; (ii) failing to accurately and properly disclose the finance charge; and (iii) failing to accurately and properly disclose the amount financed. To the extent that Intrust and Plaintiff entered into an open-end credit transaction, Plaintiff maintains that Intrust violated TILA by (i) failing to comply with the underwriting requirements of TILA and (ii) failing to provide the required periodic statements required by TILA. Intrust seeks to dismiss Plaintiff's TILA claim arguing that there was no undisclosed fee that it was required to disclose to Plaintiff and that the Loan Agreement was not an open-end credit transaction. Because whether Intrust imposed an undisclosed finance charge is a question of fact, it is not appropriate to resolve on a motion to dismiss. However, the Loan Agreement, when read as a whole and in the context of the air conditioner purchase, is not an open-

end credit transaction. Consequently, Plaintiff's TILA claim related to an open-end credit transaction is dismissed.

### i. *Plaintiff Has Adequately Pled She Was Charged an Undisclosed Fee*

Plaintiff's complaint alleges that the TILA disclosure statement represented that $8,000.00 was paid to Fluid Air, which was materially false. Plaintiff alleges that the loan proceeds were paid to GreenSky and then GreenSky paid a portion of the proceeds to Fluid Air. Thus, Plaintiff alleges that the amount financed included the undisclosed Credit Service Fee that was paid to GreenSky for arranging the credit. As a result, the required disclosures inaccurately represented the annual percentage rate on the loan, the amount financed, and the amount of the finance charge. The complaint alleges that the Credit Service Fee would not have been charged in a cash-only transaction and, thus, it constitutes an undisclosed finance charge in violation of TILA.[5]

In response, Intrust contends that there was no violation of TILA because Plaintiff was not charged, directly or indirectly, for any fees paid to GreenSky and that Plaintiff would have paid

---

[5]TILA defines a "finance charge" as:

> the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction.

15 U.S.C. § 1605(a). Regulation Z gives examples of different types of charges that constitute finance charges, including:

> Charges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as a deduction from the proceeds of the obligation.

12 C.F.R. § 226.4(b)(6).

$8,000.00 for the air conditioner regardless of whether she paid cash or credit; therefore, it is not a finance charge that must be disclosed. Intrust further argues that it is clear from Plaintiff's Exhibit A, the Agreement for Change Out Service, that the cash price of the air conditioner was $8,000.00. Thus, there was no finance charge incurred by Plaintiff because the cash price and the price paid by Plaintiff were the same. Intrust also relies on the language of the Loan Agreement to establish that Plaintiff did not directly or indirectly pay a finance charge. The Loan Agreement states "Your Merchant/Provider pays transaction fees as a result of your use of the Shopping Pass or Loan. Your Merchant/Provider is prohibited from surcharging you to cover the cost of these transaction fees."

As set out above, however, Plaintiff alleges in her complaint that the $8,000.00 included an undisclosed finance charge. At the motion to dismiss stage the Court must take the allegations in the complaint as true. Simply because the Loan Agreement states that Fluid Air was prohibited from surcharging Plaintiff to cover its fees does not mean that Plaintiff was not charged. Furthermore, the Agreement for Change Out Service is not as clear as Intrust would have the Court believe. The Agreement for Change Out Service states that the "Cash Value of Equipment" is $8,000.00. Value and price are not the same thing. Moreover, all of Intrust's arguments require factual findings, which cannot be made at the motion to dismiss stage. Thus, taking the pleadings in the light most favorable to Plaintiff, Plaintiff has adequately alleged that she was charged an undisclosed finance charge in violation of TILA.

    *ii.*  *The Loan Agreement Was Not an Open-End Credit Transaction*

Intrust maintains that the Loan Agreement was not an open-end credit transaction and, thus, Plaintiff's TILA claims based on the requirements for open-end credit transactions must be dismissed. Under TILA, an open-end credit plan is one "under which the creditor reasonably

contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(j). Intrust argues, without citing any support, that the Loan Agreement contemplated a single transaction to finance the air conditioner. In response, Plaintiff maintains that the GreenSky Shopping Pass is a credit card and, as a result, the Loan Agreement constitutes an open-end credit transaction.

While the Shopping Pass may have some of the attributes of a credit card and the Loan Agreement contains some language that could indicate an open-end credit transaction, it is clear from the face of the Loan Agreement that it was not an open-end credit transaction. Reading the Loan Agreement as a whole, it is apparent that Plaintiff was approved for $8,000.00 in credit and received that full $8,000.00 as the result of a single transaction that took place at approximately the same time that Plaintiff obtained the credit. Thus, having reached her credit limit with the single transaction, no further transactions could have been contemplated by the parties. As one court put it: "In practical terms, under an open end credit plan, there is no extension of credit simply by the issuance of the card." *Goldman v. First National Bank of Chicago*, 532 F.2d 10, 18 (7th Cir. 1976). That is the opposite of what happened here; here, there was an extension of credit simply with the issuance of the Shopping Pass. Plaintiff was issued the Shopping Pass at the same time that the $8,000.00 credit was extended. Consequently, Plaintiff's TILA claims based on the requirements for open-end credit transactions are dismissed with prejudice.

### B. *The Motion to Dismiss Plaintiff's Declaratory Relief Claim is Denied*

Plaintiff's declaratory judgment claim seeks a declaration that the extensions of credit arranged by GreenSky are void as a matter of law. Defendants move to dismiss this claim on the

ground that it is duplicative of Plaintiff's Florida CSOA claim. While the claims are based on alleged violations of the same statute, Plaintiff is entitled to seek alternative relief.

A plaintiff is entitled to plead in the alternative, pursuant to Federal Rules of Civil Procedure 8(a) and (d). Further, the federal declaratory relief statute, under which Plaintiff seeks relief, permits relief "whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal Rule of Civil Procedure 57 reaffirms this, stating "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." While Plaintiff may not be able to obtain both legal and equitable relief, she may pursue her claim for equitable relief until she proves entitlement to legal relief. *See Coastal Wellness Center, Inc. v. Progressive American Insurance Co.*, 2018 WL 1701995, *4 (S.D. Fla. April 4, 2018). Consequently, the motion to dismiss Plaintiff's declaratory judgment action is denied.

### C. *Plaintiff's Unjust Enrichment Claim is Dismissed in Part*

Plaintiff alleges that Defendants were unjustly enriched when they accepted and retained charges for credit services from Plaintiff. Plaintiff maintains that Defendants were not entitled to these charges by law and that Defendants should not be permitted to retain the benefits of these illegal charges. Defendants move to dismiss this claim.

> i. *Plaintiff's Unjust Enrichment Claim Against Intrust is Dismissed Without Prejudice*

Intrust moves to dismiss the unjust enrichment claim against it on two grounds. First, Intrust argues that Plaintiff has not alleged the elements of an unjust enrichment claim. Under Florida law, a Plaintiff claiming unjust enrichment must allege: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit

conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." *Hillman Construction Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994). Intrust maintains that Plaintiff has failed to allege a benefit she conferred on Intrust. In fact, Intrust argues that Plaintiff received the benefit, the air conditioner, and it is inequitable for her to keep it because she has not paid for it. Plaintiff has not responded to this argument and the complaint does not allege any benefit she has conferred on Intrust. The complaint alleges that Defendants collected, accepted, and retained charges for credit services. However, there is nothing in the complaint that indicates that Plaintiff actually paid anything to Intrust, directly or indirectly. Consequently, Plaintiff has failed to adequately plead her unjust enrichment claim against Intrust.

Second, Intrust argues that Plaintiff cannot maintain her unjust enrichment claim because an express contract governs their relationship. Plaintiff maintains that, under Federal Rule of Civil Procedure 8(d)(2), she is permitted to plead in the alternative. Furthermore, unlike the cases cited by Intrust involving an express contract, Plaintiff disputes the validity of the contract between her and Intrust. Consequently, Plaintiff may plead in the alternative. However, as set out above, Plaintiff has failed to adequately plead her claim. Accordingly, the unjust enrichment claim against Intrust is dismissed with leave to replead.

    *ii.    Plaintiff's Unjust Enrichment Claim Against GreenSky is Adequately Pled*

GreenSky also seeks to dismiss the unjust enrichment claim against it because Plaintiff has not alleged the elements of an unjust enrichment claim. GreenSky argues that Plaintiff has not

alleged any facts showing that she has conferred a benefit upon GreenSky.[6] Plaintiff responds that the complaint alleges that GreenSky was paid the Credit Service Fee for arranging the credit between Intrust and Plaintiff and, according to the complaint, that Fee came from Plaintiff "paying or agreeing to pay money for credit services." Taking the allegations in the light most favorable to Plaintiff, Plaintiff has adequately pled an unjust enrichment claim against GreenSky.

### D. *The CSOA Claim Is Dismissed in Part*

Defendants seek to dismiss Plaintiff's Florida CSOA claim based on a choice of law provision in the Loan Agreement, which, in effect, designates Kansas law as the applicable law. In the alternative, Intrust argues that it is exempt from the Florida CSOA because it is a federally insured bank and GreenSky argues that it is not a Credit Service Organization under the CSOA. The Court need not address whether Kansas law applies to the Loan Agreement as to the CSOA claim because Plaintiff concedes that Intrust is exempt from the Florida CSOA and the choice of law provision does not apply to GreenSky, a non-party to the Loan Agreement. While Plaintiff concedes that Intrust is exempt from the Florida CSOA, Plaintiff argues that Intrust's liability is derivative pursuant to the FTC Holder Rule. The Court will address the claims against GreenSky first.

#### i. *The CSOA Claim Against GreenSky is Adequately Pled*

Plaintiff is correct that GreenSky is not a party to the Loan Agreement and, therefore, the choice of law provision in the Loan Agreement would not apply to a claim against GreenSky. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1169 (11th Cir. 2009) (generally, a choice of law clause "is a contractual right that cannot ordinarily be invoked by or against a party who did not sign

---

[6]GreenSky also raises the issue of whether an unjust enrichment claim is suitable for class certification. The Court will address this issue if and when it is addressed in a motion for class certification.

13

the contract in which the provision appears."). However, GreenSky contends that it is not a credit service organization as that term is defined by the Florida CSOA and, thus, the Florida CSOA does not apply to it. The Florida CSOA defines a "credit service organization" as:

> any person who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can or will sell, provide, or perform, in return for the payment of money or other valuable consideration, any of the following services:
>
> 1. Improving a buyer's credit record, history, or rating;
>
> 2. Obtaining an extension of credit for a buyer; or
>
> 3. Providing advice or assistance to a buyer with regard to the services described in either subparagraph 1. or subparagraph 2.

Fla. Stat. § 817.7001(2)(a). GreenSky argues that it does not offer or provide any of the services listed in the statute. It further argues that it does not represent buyers and does not charge buyers for services in connection with extensions of credit; instead, it represents the lenders.

In her complaint, Plaintiff alleges that "GreenSky acted as a credit service organization in its actions with [Plaintiff]" and "sold, provided and performed in return for payment of money or other valuable consideration the procurement and obtaining an extension of credit for [Plaintiff] as a buyer." [DE 31 at ¶85]. Thus, Plaintiff has pled all of the elements necessary to show that GreenSky is a credit service organization as defined by the CSOA. At the motion to dismiss stage, the Court must take these allegations as true.

Plaintiff further argues that there is no authority to support GreenSky's proposition that it is only a credit service organization if it represents the buyer and charges the buyer for its services. The only case in Florida this Court found that interprets this section of the Act is inapposite. *See Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824 (Fla. 4th DCA 2010) (finding that a car

dealership which assisted its customers in obtaining financing was not a credit service organization because the customer did not pay the dealer a fee or other consideration for assistance in obtaining the financing). While GreenSky argues that Plaintiff did not pay it a fee, Plaintiff's complaint alleges that GreenSky was paid a fee, which came from Plaintiff directly or indirectly. Taking the allegations in the light most favorable to Plaintiff, Plaintiff has adequately pled that GreenSky received a fee from Plaintiff in return for GreenSky obtaining an extension of credit on behalf of Plaintiff.

    *ii.* *The CSOA Claim Against Intrust is Dismissed Without Prejudice*

Plaintiff concedes that Intrust is a national bank and, as such, is exempt from the CSOA. However, Plaintiff maintains that Intrust has derivative liability for GreenSky's violation of the CSOA based on the terms of the Loan Agreement and the FTC Holder Rule. The Loan Agreement contains the following language, as required by the FTC Holder Rule, 16 C.F.R. § 433.2:

> NOTICES: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

[DE 31-3, ¶23 (all capitals in original)]. Based on this language, Plaintiff argues that if GreenSky is liable under the CSOA, then so is Intrust. In its reply, Intrust argues that Plaintiff has not adequately pled a basis for direct liability against GreenSky and, therefore, Intrust cannot be held derivatively liable.[7] However, as set out above, for purposes of a motion to dismiss, Plaintiff has

---

[7]In support of this proposition, on page 11 of their reply, Defendants cite: "*See Reneker v. Ernie Haire Ford, Inc.*, 2004 WL 2737908 *9 (M.D. Fla. June 3, 2004) (holding that plaintiff's derivative claims asserted against the creditor must be dismissed as a matter of law)." Defendants again cite to this "case" in the next paragraph – "*Id.* at n.8 (*quoting Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809, 813 (Fla. 4th DCA 2002)) (holding that

15

adequately pled a claim under the CSOA against GreenSky. In the alternative, Intrust argues that Florida courts have found that the FTC Holder Rule is usually not the basis for a consumer to seek affirmative relief.

In *Schauer v. General Motors Acceptance Corp.*, a Florida appellate court explained the application of the FTC Holder Rule:

> While "[t]he rule is expressly designed to compel creditors to either absorb seller misconduct costs or seek reimbursement of those costs from sellers," *Tinker v. DeMaria Porsche Audi, Inc.*, 459 So. 2d 487, 492 (Fla. 3d DCA 1984)(footnotes omitted), *review denied*, 471 So. 2d 43 (Fla. 1985), it is ordinarily used as a shield, not as a sword for consumers to seek affirmative relief. A recognized exception to this limitation is where a consumer maintains an action against the creditor for a return of monies paid on an account. 40 Fed. Reg. 53,505, 53,524 (1975) (cited in *Crews v. Altavista Motors, Inc.*, 65 F. Supp. 2d 388, 390 (W.D. Va. 1999)). However, such relief "will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified." *Id.*

819 So. 2d 809, 813 (Fla. 4th DCA 2002). Based on this interpretation of the FTC Holder Rule, Plaintiff has not sufficiently pled a cause of action against Intrust for derivative liability under the FTC Holder Rule. Plaintiff has not pled that she is seeking a return of monies paid to Intrust. In fact, she has not actually pled that she has made any payments to Intrust. Thus, Plaintiff has failed to sufficiently plead a claim against Intrust based on the Florida CSOA and the FTC Holder Rule. Consequently, the claim against Intrust is dismissed without prejudice.

---

affirmative relief is only proper where the debtor seeks the return of monies paid due to " . . . a sellers [sic] breach . . . so substantial that a court is persuaded that recession [sic] and restitution are justified.")." While Defendants' citations indicate that this is the holding of a court, it is not. Defendants have cited to a party's motion papers, not a court's decision. Representing motion papers as a decision of a court is, at best, unbelievably sloppy and, at worst, a violation of The Rules Regulating the Florida Bar and Federal Rule of Civil Procedure 11. Going forward, the Court expects that counsel will take every effort to ensure that such "sloppiness" does not occur again.

16

### E. *Plaintiff's FCCPA Claim is Dismissed Without Prejudice*

Lastly, Defendants seek to dismiss Plaintiff's Florida Consumer Collection Practices Act claim. Defendants again argue that the choice of law provision in the Loan Agreement, designating Kansas law, precludes this claim. However, as noted above, the choice of law provision does not apply to GreenSky. In the alternative, Defendants argue that Plaintiff has failed to plead sufficient facts to establish a violation of the FCCPA.

Under the FCCPA, a person is prohibited from claiming, attempting, or threatening "to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9). While Plaintiff alleges that GreenSky attempted to collect monies from her, the complaint does not set out any specific facts related to any collection efforts by GreenSky. Thus, the complaint alleges nothing more than a conclusion, a formulaic recitation of one of the elements of the claim. This is insufficient under *Iqbal* and *Twombly*. Accordingly, the FCCPA claim against GreenSky is dismissed without prejudice.

While the choice of law provision, if enforceable, would require dismissal with prejudice of this claim against Intrust, the Court declines to decide this issue, which has not been adequately briefed, at this stage of the proceedings. However, the claim against Intrust suffers from the same pleading deficiency as the claim against GreenSky – there are no actual facts alleged regarding attempts at collection. Consequently, the FCCPA claim against Intrust is dismissed without prejudice.

Accordingly, it is hereby

ORDERED that:

1. Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint [DE 35] is GRANTED in part and DENIED in part:

    a) Count I is dismissed with prejudice to the extent that it alleges that the Loan Agreement was an open-end credit transaction.

    b) Plaintiff's unjust enrichment claim, Count III, against Intrust is dismissed without prejudice.

    c) Plaintiff's CSOA claim, Count IV, against Intrust is dismissed without prejudice.

    d) Count V against both Defendants is dismissed without prejudice.

    e) The Motion to Dismiss is denied in all other respects.

2. Plaintiff shall file a second amended complaint by **September 28, 2018.**

DONE AND ORDERED in Chambers in Miami, Florida, this 12th day of September, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE