**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  0:17-cv-61484-DPG**

FRANCISCA D. LOCICERO, an individual,
on behalf of herself and all others similarly
situated,

        Plaintiff,                              **CLASS ACTION**

vs.

INTRUST BANK, N.A., a national banking
association, and GREENSKY, LLC, a Georgia
limited liability company,

        Defendants.

_____/

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiff, Francisca D. Locicero ("Ms. Locicero" or "Class Representative"), on behalf of

herself and all others similarly situated, by and through her undersigned attorneys,  pursuant to

Rule 23,  Fed. R. Civ. P., respectfully moves the Court  to enter an order: (1) certifying the proposed

Class for settlement purposes; (2) preliminarily approving the proposed Settlement Agreement

with Defendants,  Intrust Bank, N. A. ("Intrust") and Greensky, LLC ("Greensky"); (3) directing

notice to the Class; (4) setting dates for opt-outs, objections and a final fairness hearing, and in

support would state as follows:

1.  Counsel for Plaintiff and Defendants have reviewed and analyzed the complex factual

and legal issues presented in this action ("Class Action"), and the risks and expense involved in

pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those

obtained through this settlement, the protracted nature of the litigation and the likelihood, costs

and possible outcomes of one or more procedural and substantive appeals.

1

2.      Based upon this review and analysis, Plaintiff and Defendants embarked upon and concluded settlement discussions, and executed the Class Action Settlement Agreement (the "Class Settlement Agreement"), filed herewith as Exhibit "A."

3.      The parties desire to settle and compromise the Class Action on the terms and conditions embodied in the Class Settlement Agreement and have stipulated for settlement purposes only to a class of approximately 132 account members defined as follows:

> All persons who obtained an extension of credit in the State of Florida from Intrust that was arranged by GreenSky represented by a contract the same or substantially similar to the Locicero Loan Agreement, between the time period from July 26, 2016 and July 25, 2017.
>
> ("Settlement Class")

4.      Under the terms of the Class Action Settlement Agreement[1] and subject to court approval:

a.      **Payment by Defendants:**  Settling Defendants have agreed to establish a settlement a fund of $359,000 ("Settlement Fund") for the payment of settlement benefits.  As discussed separately below, attorneys' fees, litigation costs, a Service Award to the Named Plaintiff, and the costs paid to a third-party Claims Administrator to administer the settlement (including mailing and emailing this notice) will be paid out of this amount.  The balance of the Settlement Fund ("Net Settlement Fund") will be divided among all Class Members *pro rata*, as described below.

b.      **Class Representative Service Award:**  In addition to the other benefits as a Class Member, Defendants will pay $7,500 ("Service Award") from the Settlement Funding Payment to the Class Representative for her role in this litigation, subject to Court approval.

---

[1] Unless otherwise indicated, capitalized words are defined terms in the Settlement Agreement.

      c.   **Attorney Fees and Costs**. Class Counsel will ask the Court to approve attorneys' fees and expenses ("Attorney Fee Request") to be paid from the Settlement Fund.  As fees, Class Counsel will ask the Court to award the sum of 33 1/3 % of the Settlement Fund ($119,654.70), in addition to costs, travel, mediation and litigation expense incurred by Class Counsel in the amount of $15,000.

      d.   **Settlement Administration:**  Through the Settlement Administration Fee paid through the Settlement Funding Payment, American Legal Claim Services, LLC shall cause to be mailed by first class mail: (1) the Class Notice, and (2) the Settlement Checks.

      e.   **Cy Pres Award**:  To the extent that there are any funds from un-cashed, expired Settlement Checks remaining in the Residual Fund (as defined in §9.2), the balance of the Residual Fund will be paid over as a *cy pres* award to Class Counsel to be distributed to the Florida Bar Foundation for use in the education and representation of consumers.

     5.   Counsel for Plaintiff and the proposed class believes that the settlement of this action on the terms and conditions set forth in the Class Settlement Agreement is fair, reasonable, and adequate, and would be in the best interests of the members of the proposed class.

## MEMORANDUM OF LAW

### I.  Procedural History

#### A.  The Complaint and Motions to Dismiss

This action was brought by Ms. Locicero on her own behalf and all others similarly situated against Defendants for violation of state and federal law, including the federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and the Florida Credit Service Organizations Act, Fla. Stat. §817.7001, *et seq.* ("CSOA") for the failure of Defendants to make adequate consumer financing disclosures in their written loan agreement. [DE 56, ¶¶ 47-54, 57-63, 81-82, 89-96, 110].

With respect to Intrust, Ms. Locicero alleged that Intrust failed to provide its customers with cost-of-credit disclosures in a form that the customer could keep prior to consummation of the credit transaction. The TILA requires the creditor to make the described disclosures "before the credit is extended." 15 U.S.C. §1638(b).  In this regard, Regulation Z states: "The creditor shall make disclosures before the consummation of the transaction." 12 C.F.R. §226.17(b).

With respect to Greensky, Ms. Locicero alleges that GreenSky charged an undisclosed fee to arrange for the loans of Ms. Locicero and the other class members without complying with the CSOA.  Pursuant to Florida Statute §817.7005(1), a credit service organization shall not charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit service organization has agreed to perform for the buyer, unless the credit service organization has obtained a surety bond.. Further, under Florida Statute §817.702, a credit service organization must also give a consumer to whom it is providing services, a written statement which will detail the services provided, their right to certain required information for the consumer, and the total fees to be charged to the consumers before the credit service organization actually performs any services on the consumer's behalf. In her Second Amended Complaint, Ms. Locicero alleged that Greensky did not comply with the disclosure and bonding requirements of the CSOA.

On September 13, 2018, this Court entered an Order on Defendants' Joint Motion to Dismiss Plaintiff's Amended Complaint, granting it in part and denying in part. [DE 53].  The Plaintiff survived dismissal with the majority of her claims intact.  Of particular relevance to the proposed settlement, Count I, violation of the TILA by Intrust survived to the extent that Plaintiff entered into a closed-end credit transaction, and Count IV, violation of the CSOA, survived as to GreenSky.  [DE 53, p. 18].  The Court granted leave to file a Second Amended Complaint. [*Id.*] On October 9, 2018, Plaintiff filed her Second Amended Complaint. [DE 56].

## B.   Discovery and Mediation

On October 17, 2018, all parties participated in mediation with JAMS in Philadelphia, at which time the matter did not resolve and the mediation was continued.  Parties conducted written discovery through March 4, 2019 and returned to mediation on April 11, 2019.  During the course of discussions and discovery, Defendants claimed that class members may have signed a document acknowledging receipt of loan disclosures, hereafter referred to as "Disclosure Acknowledgement Forms." Ms. Locicero has alleged that she did not sign a Disclosure Acknowledgement Form, and that like the proposed class members, she never received proper disclosure documentation. Whether class members received Disclosure Acknowledgement Forms was a disputed fact that posed a risk to parties and encouraged settlement.

After the two mediation sessions, the parties agreed to a fair and reasonable settlement that was finalized in the Settlement Agreement. In support of preliminary approval, the following factual record has been made:

- Declaration of Robert W. Murphy, Esquire dated June 26, 2019 ("Murphy Declaration"), which is filed contemporaneously herewith and incorporated herein by reference as Exhibit "B";

- Declaration of Kathleen P. Hyland, Esquire dated June 26, 2019 ("Hyland Declaration"), which is filed contemporaneously herewith and incorporated herein by reference as Exhibit "C";

- Declaration of Francisca D. Locicero dated July 12, 2019 ("Locicero Declaration"), which is filed contemporaneously herewith and incorporated herein by reference as Exhibit "D";

-  Declaration of Manuel A. Garcia-Linares, Esquire dated June 13, 2019 ("Garcia-Linares Declaration"), which is filed contemporaneously herewith and incorporated herein by reference as Exhibit "D"

### III.  STANDARD OF REVIEW

#### A.  Standard for Class Certification.

The determination to certify a class action rests in the discretion of the trial court.  *Jaffree v. Wallace*, 705 F.2d 1526, 1536 (11th Cir. 1983). Class certification is a procedural determination, and the court should not consider the merits of the claims asserted in evaluating the availability of the class action vehicle. *Powers v. Governmental Employees Ins. Co.*, 192 F.R.D. 313, 316 (S.D. Fla. 1998) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, (1974)).  When reviewing a motion to certify a class, the court must take the substantive allegations of the complaint as true. *In re Carbon Dioxide Antitrust Litigation*, 149 F.R.D. 229, 232 (M.D. Fla. 1993).

#### B.  Certification of the Class for Settlement Purposes
#### and the Preliminary Approval Standard.

The amendments to Rule 23 of the Federal Rules of Civil Procedure became effective on December 1, 2018. With respect to class settlements, the amendments (1) expand the means of notice to class members; (2) set a performance standard for the information that must be submitted to the district court before the district court can decide to give notice to the class of a proposed settlement; and  (3) establish core factors the district court must consider in evaluating a request to approve a proposed settlement.

Rule 23(e) was amended to add a new requirement that parties seeking preliminary approval of a proposed class settlement "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Parties must show that the court is able to (i) approve the proposed settlement and, (ii) if a class has not been certified, that the court will be able to certify the class for purposes of judgment on the proposal. As discussed below, the record supports preliminary approval and directing notice to the Class.

Rule 23(e) requires court approval for settlement of class claims.  The approval of a class action settlement is a multistep process. First, and prior to granting preliminary approval of the settlement, the Court must take the initial step of determining that the proposed class can be certified pursuant to Rule 23 for settlement purposes.  *See,* Manual §21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 621-2 (1997).

Then, the court must make a preliminary determination of whether the proposed settlement is within the range of possible approval.  *See, Manual for Complex Litigation* (4th 2004) §21.632 (the "Manual").  After preliminarily approving the settlement, the court must approve the proposed notice to the class.  *See* Manual, §21.633.  Finally, once the class members have received notice and have had the opportunity to object or opt out, the court must hold a final fairness hearing during which it finally approves the settlement.  *Id.* §21.644.

Preliminary approval requires the court to determine whether the settlement is within the "range of reasonableness," and whether class notice setting forth the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are warranted. *See,* 4 Herbert B. Newberg, Newberg on Class Actions, §11.25 (1992).

If a court determines that a settlement is within the "range of reasonableness," the court should approve the settlement preliminarily.  *See, In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011).   Courts in the Eleventh Circuit have concluded that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Id.* (*quoting, Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010)).

## IV.  LEGAL ARGUMENT

### A.  The Proposed Settlement Class Meets the Requirements
for Certification of a Settlement Class Under Rule 23(e).

#### 1.  The Class Definition is Appropriate.

Under Rule 23, a class should be certified when the plaintiff meets all four requirements of

Rule 23(a) and one of the requirements of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521

U.S. 591, 613, 620 (1997) ("for settlement-only class certification, a district court need not inquire

whether the case, if tried, would present intractable management problems").  Rule 23(a) provides:

> One or more members of the class may sue or be sued as
> representative parties on behalf of all members only if: (1) the class
> is so numerous that joinder of all members is impractical; (2) there
> are questions of law or fact common to the class; (3) the claims or
> defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly
> and adequately protect the interest of the class.

In the instant case, the proposed settlement class is defined as:

> All persons who obtained an extension of credit in the State of
> Florida from Intrust Bank, N.A. that was arranged by GreenSky,
> LLC during the time period from July 26, 2016 to July 25, 2017.

The above described group of persons can easily be identified. Greensky has disclosed that

approximately 132 accounts were opened in Florida for Intrust during the relevant time period.

#### 2.  Numerosity is Established to the Extent that Joinder is Impractical.

Courts have noted that the requirement of numerosity is more adequately described as the

"impracticality of joinder" requirement.  *See, generally, Miles v. America On Line, Inc.,* 202 F.R.D

297, 302 (M.D. Fla. 2001).  This means that the Court must find that the difficulty or in

convenience of joinder of all members makes class litigation desirable.  *Singer v. AT&T Corp.,*

185 F.R.D. 681, 687 (S.D. Fla. 1998).  The proposed class in the instant action easily satisfies the

numerosity requirement as the class size is at least 132 members.[2]  The proposed Settlement Class

is thus so numerous as to make individual joinder of class members extremely impractical.

### 3.  The Class Representative Has Asserted Questions of Law and Fact Common to the Class

#### a.  Overview of commonality element.

Under Rule 23(a)(2), the Court must find the existence of questions of law and fact that are

common to all class members before the matter may be certified as a class action.  Not all factual

legal questions raised in the litigation need to be common so long as at least one issue is common

to all class members.  *Armistead v. Pingree*, 629 F.Supp. 273, 280 (M.D. Fla. 1986); *Pottinger*,

720 F. Supp. at 958.  "It is only necessary to find at least one issue common to all class members."

*Pottinger v. City of Miami*, 720 F.Supp. 955, 958 (S.D. Fla. 1989).  Indeed, a "sufficient nexus is

established if the claims or defenses of the class and the class representatives arise from the same

event or pattern or practice and are based on the same legal theory."  *Kornburg v. Carnival Cruise*

*Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985).

#### b.  Analysis of The Commonality Requirement.

To meet the commonality requirement of Rule 23(a)(2), there must be "questions of law or

fact common to the class." Fed.R.Civ.P. 23(a)(2). This bar is "not a high one." *Rodriguez v. Nat'l*

*City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). "A finding of commonality does not require that all

class members share identical claims, and indeed 'factual differences among the claims of the

putative class members do not defeat certification.' " *In re Prudential Ins. Co.*, 148 F.3d at

310(quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). All that is required is that "the

---

[2] To the extent that some accounts have co-obligors, the settlement benefits will be paid out jointly to such co-obligors.

named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez*, 726 F.3d at 382. Thus, "[t]he commonality element is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011) (internal brackets and quotations marks omitted); *accord, Churchill v. Cigna Corp.*, 2011 WL 3563489, at *4 (E.D. Pa. Aug. 12, 2011) ("Because the entire class was allegedly harmed by [the defendant]'s uniform policy, and because resolution of the class members' claims hinges on whether such a policy is proper, the commonality element is satisfied."); *Stewart v. Associates Consumer Discount Co.*, 183 F.R.D. 189, 195 (E.D. Pa. 1998) (commonality present where financial institution charged customers improperly inflated interest rates, since the defendant "engaged in standardized conduct toward members of the proposed class"); *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11, 2008) (commonality satisfied where "[t]he challenged practice is a standardized one applied on a routine basis to all customers" by the bank).

In the present case, there is a common factual question regarding whether cost-of-credit disclosures were provided to consumers prior to loan consummation. In addition, there are common legal questions relating to Plaintiffs' claims, as outlined in the briefing on the motions to dismiss. Accordingly, the commonality requirement is satisfied.

Further, there are no significant individual issues that would preclude a finding of commonality. The only individual issue is the identification of the class members affected, which Defendants have agreed to produce from their records. As such, identification of class members does not present an obstacle to class certification. Under the circumstances at hand, where it is alleged that all class members received the same purportedly violative letter and no individual

determinations which overwhelm the common question are required, the commonality element is met. *Mailloux v. Arrow Financial Svcs., LLC,* 204 F.R.D. 38, 41 (E.D. N.Y. 2001).

### 4. The Claims of Ms. Locicero are Typical of the Claims of Class Members.

Linked closely with Rule 23(a)(2) requirement of commonality is the typicality requirement of Rule 23(a)(3).  The Eleventh Circuit has explained that typicality requires the existence of:

> [A] nexus between the class representatives claims or defenses and the common questions of law or fact that unite the class.  A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses.  A factual variation will not render a class representative's claims atypical unless the factual position of the representative markedly differs from that of other members of the class.

*Kornburg*, 741 F.2d at 1337.  In other words, "typicality pertains to the individual characteristics of the named plaintiff in relation to the class."  *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 659 (M.D. Fla. 2015).

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 303 (3d Cir. 2005) (quoting *Baby Neal*, 43 F.3d at 56). In evaluating whether the typicality requirement has been met, the court must "assess whether the class representatives themselves present those common issues of law and fact that justify class treatment." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985). This does not mean that the class representatives and putative class members must share "identical" claims. *Id.; see also Baby Neal*, 43 F.3d at 56. Rather, it simply requires that the "claims be common, and not in

11

conflict." *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988); *accord, In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) ("[T]he named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.' "). Thus, "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal*, 43 F.3d at 58; *see also Hassine*, 846 F.2d at 177 (court must examine whether "the named plaintiff's individual circumstances are markedly different").

In this case, the claims of Ms. Locicero under TILA and CSOA are not factually distinguishable from the claims of the class members.  Each class member's claim arises from the same course of conduct that affected Ms. Locicero:  the Defendants failure to provide mandated disclosures of the consumer finance transaction before consummation   Therefore, the requirement of Rule 23(a)(3) is satisfied.  *See Diakos*, 137 F.Supp.3d at 1309 (concluding that where a named plaintiff "is a member of his proposed class and has suffered the same injury," typicality is satisfied); *Roundtree*, 304 F.R.D. at 660.

### 5.  Plaintiff and Her Counsel Will Adequately Represent the Interests of the Class.

#### a.  Overview of "Adequacy" Factor.

Rule 23(a)(4) requires that the representatives will fairly and adequately represent the class interest:

> The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation.... The adequacy requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and 'possesses the same interest and suffer the same injury' as the class representative.

*Miles v. America Online, Inc.*, 202 F.R.D. 297, 303 (M.D. Fla. 2001) (internal citations omitted).

Thus, the three factors important for determination of "adequacy" are:

(1)    Whether the plaintiff has interests that are antagonistic to the class;

(2)    Whether plaintiff has sufficient interest in the outcome to ensure vigorous advocacy; and

(3)    Whether plaintiff's counsel's qualifications, experience and ability to conduct the litigation vigorously.

Adequacy of representation is presumed unless there is evidence to the contrary.  *Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd.*, 197 F.R.D. 522, 528 (S.D. Fla. 2000).

### b.  Adequacy of Representation.

With respect to the issue of adequacy, Ms. Locicero filed contemporaneously herewith the declarations of herself and counsel. In this case, the interest of Plaintiff is identical to the class members. The representative class member seeks damages as a result of the alleged unlawful practices of Defendants. Given the identical claims of the class members and the commitment of Plaintiff to the prosecution of this action, Plaintiff is an adequate representative of the class.

Ms. Locicero is fully involved with the litigation [Locicero Declaration - ¶ 15], including assisting in settlement negotiations and attorney conferences. Further, Ms. Locicero is represented by counsel with significant experience in the prosecution of litigation in consumer protection class actions, and there is no doubt that the "vigorous prosecution" element is satisfied. [Murphy Declaration - ¶¶10-24; Hyland Declaration-¶¶ 7-21]. Indeed, one Court remarked that with respect to setting Attorney Murphy's hourly rate above the local market range that "his wealth of experience in litigating class actions under federal consumer protection statutes justifies his high rate." *Whitaker v. Navy Federal Credit Union,* 2010 WL 3928616, at *6 (D. Md. 2010).

### 6.   The Instant Action May be Certified Under Rule 23(b)(3) as Common Questions of Law and Fact Predominate the Proceeding.

#### a.  Common Questions of Law and Fact Predominate.

In addition to meeting the prerequisites of Rule 23(a), an action must also satisfy at least one of the three conditions of subdivision (b) of Rule 23. Here, Ms. Locicero seeks certification under Rule 23(b)(3) which provides in pertinent part:

> (b)  An action may be maintained if Rule 23(a) is satisfied and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members....

In deciding whether common questions predominate, courts focus on the issue of establishing liability on behalf of every class member rather than on an individual class member alone. *See, Sharf*, 295 F.R.D. at 670-71 (*citing*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009); *see, also, Dura-Bilt Corp. v. Chase Manhattan Corp.* 89 F.R.D. 87, 93 (S.D. N.Y. 1981). Not all questions of law or fact need to be in common. *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 333-34 (S.D. Fla. 1996). The existence of a few individual questions will not negate the predominance of common issues. Rule 23(b)(3) only requires that the common issues predominate over the individual issues. *Id.*

The Supreme Court recently clarified the predominance standard that applies under Rule 23(b)(3). As explained by the Court in *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013), "Rule 23(b)(3) ... does *not* require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to class-wide proof." *Amgen*, 133 S. Ct. at

1196 (emphasis in original) (internal brackets and quotation marks omitted). Rather, the rule simply requires what it says, *i.e.*, that common questions "*predominate* over any questions affecting only individual [class] members." *Id.* (emphasis in original) (citing Fed. R. Civ. P. 23(b)(3)).

This predominance requirement is "readily met" in consumer cases such as this. *Amchem*, 521 U.S. at 624. The predominance inquiry assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Sullivan*, 667 F.3d at 297 (*quoting* Fed. R. Civ. P. 23(b)(3) advisory committee note to 1966 amendment). "In order to predominate, the common issues must constitute a significant part of the individual cases." *Chiang v. Veneman*, 385 F.3d 256, 273 (3d Cir. 2004). However, "the common issues need not be dispositive of the entire litigation." *Stewart*, 183 F.R.D. at 197. Thus, although the predominance analysis is more rigorous than the commonality requirement of Rule 23(a), the focus of the predominance inquiry is also on the conduct of the defendant. *Sullivan*, 667 F.3d at 297-99; *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("the inquiry necessarily focuses on defendants' conduct, that is, what defendants did rather than what plaintiffs did.").

In the instant case, the claims of Ms. Locicero are based on a uniform practice of Defendants not disclosing the terms of the extension of credit -including any fees to Greensky for arranging the loans- prior to consummation. Instead, Defendants mailed the loan agreements to Ms. Locicero and the other class members after the credit was extended and the home improvements performed.

Whether the practices of Defendants were unlawful because of the lack of disclosure is a classic class-wide issue that is appropriate for resolution and predominates over any individual

question.  Moreover, resolving this issue in one stroke via a class-wide settlement will "promote uniformity of decision as to persons similarly situated." *Sullivan*, 667 F.3d at 297.  Thus, the proposed Settlement Class fulfills the predominance requirement.

### b.  A Class Action is Superior to Other Available Methods to Resolve this Controversy.

Whether a class action is a superior method of resolving the controversy presented involves consideration of whether the "procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly v. Sabretech, Inc.,* 195 F.R.D. 48, 51 (S.D. Fla. 1999); *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 451 (E.D. N.Y. 1996) ("Class actions are superior method for resolving controversies when the main objectives of Rule 23 are served; namely, the efficient resolution of the claims or liabilities of many individuals in a single action …").  The superiority analysis "focuses upon the relative advantages of proceeding as a class action suit over any other forms of litigation that might be realistically available to a moving party." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015), *reconsideration denied sub nom. Roundtree v. Ross*, No. 8:14-CV-357-T-27AEP, 2015 WL 1931103 (M.D. Fla. Apr. 28, 2015) (*citing*, *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1183–84 (11th Cir. 2010)).

First, the Court should determine whether adjudicating the matter is in "the class members' interests in individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  The economic reality of the cases such as this, where the individual damage amounts at stake involves a small amount compared to the cost of litigating the claims, precludes individuals from having any discernable interest in controlling the prosecution of separate actions. *Garner v. Healy*, 184 F.R.D. 598, 605 (N.D. Ill. 1999) ("[t]his is clearly an instance where 'the amounts at stake for individuals may be so small that separate suits would be impracticable.'")

16

(citation omitted). The alternative to a class action is untenable because there is no recourse for the thousands of persons for whom the economic realities of pursuing individual actions against McCabe Law Group would, for all intents and purposes, foreclose the possibility of seeking relief.

As to other superior factors, the "desirability of concentrating the litigation" in a single forum also weighs in favor of class certification, which plainly will "achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated." *Fifth Moorings Condominium, Inc. v. Shere*, 81 F.R.D. 712, 719 (S.D. Fla. 1979) (citation omitted). A class action offers the only practical method of obtaining a fair and efficient disposition of these claims, since the alternative would inefficiently duplicate many actions. Such needless and wasteful multiplication of actions is precisely the evil that the class action procedure was designed to avoid. *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

A number of district courts in the Eleventh Circuit have recognized that class claims brought pursuant to the federal and state consumer protection statutes satisfy the superiority requirement for a number of reasons. The combination of "the large number of claims, the relatively small amount of damages available, the desirability of consistently adjudicating the claims, the high probability that individual members of the proposed classes would not possess a great interest in controlling the prosecution of the claims, and the fact that it would be uneconomical to litigate the issues individually" in connection with consumer claims satisfies the superiority requirement. *See Roundtree*, 304 F.R.D. at 663; *see also Klewinowski v. MFP, Inc.*, 2013 WL 5177865, at *5 (M.D. Fla. Sept. 12, 2013) (same).

Thus, a class action is the superior mechanism for adjudicating this dispute, and the requirements of Rule 23(b)(3) are met. *See Peil v. Nat'l Semiconductor Corp.*, 86 F.R.D. 357, 374 (E.D. Pa. 1980) (finding class action is superior where "first, individual suits would not involve

17

sufficient losses to justify costs of litigation and, second, if individual suits were brought, court dockets would be unnecessarily overburdened."). As such, Plaintiff has satisfied the superiority prerequisite as well as the other prerequisites of Rule 23(a) and 23(b)(3), the Court should preliminarily certify the class for settlement purposes.

**B. The Court Should Provide Preliminary Approval of the Class Action Settlement as Being Fair, Adequate and Reasonable.**

**1. Federal Law Supports Approval of Class Action Settlement Agreements That are Fair, Adequate and Reasonable.**

As mentioned above, the amended Rule 23 also establishes that, when parties seek preliminary approval of a proposed settlement, they must provide the court with sufficient information to decide whether to notify the putative class.  Such notice "is justified" if the court "will likely be able to" both approve the proposed settlement and certify the class for purposes of judgment on the proposed settlement.

Notwithstanding the recent Rule amendment, fairness, reasonableness, and adequacy remain the touchstones for approval of a class-action settlement. The circuit courts have identified their own list of factors that govern the application of the "fair, reasonable, and adequate" test, many of which are the same in most respects and some of which may have no application in a particular case. But without intending to displace these factors, amended Rule 23(e)(2) establishes a uniform set of core approval factors that the Advisory Committee Note states, "should always matter to the decision" of the district court whether to approve the proposal.

*In Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable.

*Id.* at 1054 (internal citations omitted).

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claim asserted, courts have concentrated on the negotiating process by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983). The courts insist that settlement be the result of "arm's length negotiations" effected by counsel possessed of "experience and ability ... necessary to effective representation of the class's interests." *Id.* (citation omitted); *see, also, In re Checking Account Overdraft Litig.*, 275 F.R.D. at 661-2 ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"). Once counsel's experience is established, courts give such counsel's "opinion...supporting the settlement 'considerable weight.'" *In re: Saxon Securities Litigation,* Fed. Sec. L. Rep. 92,414 at 92,525 (S.D. N.Y. 1985). This is because "the parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments." *In re Chicken Antitrust Litigation,* 1980–1 Trade Cas. (CCH) ¶63,237 at 78,143 (N.D. Ga. 1980).

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1)     the likelihood of success or recovery;

(2)     the range of possible recovery;

(3)     the settlement terms and conditions, and how the terms of compare with the possible range of recovery;

(4)     the complexity, expense and duration of future litigation;

(5)     the substance and amount of any opposition to the settlement;

(6)     the stage of the proceedings at which settlement is reached;

(7)     the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett*, 737 F.2d at 986; *see, also, Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1530, n. 6 (11th Cir. 1994) (same).  Application of these factors shows that the proposed settlement is fair, adequate, reasonable, and in the best interest of the Settlement Class.

### 2.  Even with a Strong Factual and Legal Case, Class Members Face Significant Risk in Establishing Liability and Damages.

Although Ms. Locicero believes that her claims are meritorious, she recognizes that ultimate success on the merits is not assured. Defendants contended and continue to contend that it has meritorious defenses to the asserted claims [Settlement Agreement - p. 2].

### 3.  The Settlement Terms and Conditions Offer Substantial Benefits to All Settlement Members.

The benefit to the Settlement Class tests the reasonableness of a settlement.  Here, the proposed settlement provides remedies that are directly related to the primary relief that is being sought by the Class Representative— the recovery of damages.  Further, the amount of the settlement relief is reasonable based on the potential relief available under the TILA and the CSOA.

Under an individual action under TILA, a consumer could potentially recover statutory damages limited to twice the finance charge, but not less than $400 and not more than $4,000. 15 U.S.C. §1640(a)(A)(i).  Assuming that the Court approves the attorney fees and other

disbursements, the anticipated payment of $1,585.95 to each class member represents a significant portion of the statutory damages allowable under TILA.

Ms. Locicero is mindful that under the amendments to TILA under the Dodd-Frank Act, the statutory damages for a class action were increased to the lesser of $1,000,000 or 1 per cent of the net worth of the creditor. As referenced above, Defendants had a potentially strong defense that Ms. Locicero and the other class members had each purportedly signed Disclosure Acknowledgement Forms, which might eviscerate the TILA claim if the presumption of delivery is not overcome.

With respect to the CSOA claim against Greensky, if Ms. Locicero carried the day on the claim, she and the other class members could potentially recover "actual damages," but in no case less than the amount paid by Ms. Locicero and the class members to Greensky.  §817.706, Fla. Stat.  Again, Greensky intended to argue that the loan agreements had a choice of law provision for Kansas that made the CSOA inapplicable and that no fees were paid by the class members to create standing under the CSOA.

A well-founded concern of Ms. Locicero in this action is that if the Disclosure Acknowledgement Forms were deemed to a be valid and effective as to Ms. Locicero and the class members than all claims would have received proper disclosures under the TILA, and the claims would fail.

In light of these inherent risks of the litigation, a compromise was reached.

### 4.  The Time and Expense of Protracted Litigation Makes Settlement Appropriate.

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong,* 616 F.2d at 313; *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 247-48

(S.D. Ohio 1991) (stating that class action settlements serve the interests of both litigants and the public by avoiding time-consuming trials and appeals).  This position is especially compelling in light of the small class size.

### 5.  Class Counsel have Conducted Due Diligence Discovery and have Negotiated the Settlement from a Well-Informed Perspective.

The parties have conducted due diligence investigation, including the exchange of information relating to numerosity and demographics of the class [Murphy Declaration - ¶¶3-6]. Indeed, the initial mediation in October 2018 was continued to allow Defendants additional time to provide data relevant to the class [Murphy Declaration - ¶5].

In conjunction with the negotiations, the parties exchanged information regarding class size, scope, and damages, and exchanged documents relevant to the settlement discussions. Through this process, Class Counsel acquired sufficient knowledge and information to assess the merits of the claims and of potential settlement. [Murphy Declaration - ¶¶3-6] After two mediation sessions with a skilled mediator, the settlement discussions were successfully concluded with the execution of the written Settlement Agreement.

### 6.  Class Counsel Believe that the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration.  *See, In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D. 297, 312-13 (N.D. Ga. 1993).  Class Counsel has significant experience in litigating consumer class actions both in Florida District courts and elsewhere. *See* Exhibits B and C.

This settlement is the product of adversarial, arm's-length negotiations conducted by counsel experienced in all aspects of class action litigation. As discussed above, the proposed

settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial.    Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class. All of these factors demonstrate the reasonableness of the settlement.

### 7.  The Parties Negotiated the Proposed Settlement in Good Faith.

The proposed settlement was negotiated at arm's length and in good faith. The negotiation process was conducted in accordance with the "Standards and Guidelines for Litigating and Settling Class Actions" ("NACA Class Settlement Guidelines") promulgated by the National Association of Consumer Advocates ("NACA").   The NACA Class Guidelines were first published at 176 F.R.D. 375 (1997) and available in revised form at http://www.naca.net/assets/media/revisedguidelines.pdf. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy.  The absence of collusion is further confirmed by the involvement of a third-party neutral mediator in the negotiation of the settlement.

In sum, under the factors outlined by *Bennett* and its progeny, the settlement here is fair and reasonable and the Court should preliminarily approve the settlement.

### V.   THE COURT SHOULD APPROVE THE FORM OF NOTICE AND MEANS OF DISSEMINATION

Pursuant to Rule 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).  Specifically, Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and, (4) that any class member *may appear* and be heard at the fairness hearing.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §8.32 at 262-68 (4th Ed. 2002).  The notice must also indicate an opportunity to opt out, that the

judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel. Fed. R. Civ. P. 23(c)(2).

Subsection (c)(2)(B) of Rule 23 further provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed notice to the Class, via a U.S. first class regular mailing to the last known address of each class member, should be approved. First, the notice plan will ensure that each putative class member will receive direct notice at his or her last known mailing address. Further, the form of notice will both clearly and briefly explain the nature of the controversy between the parties while also directing the putative class members on how to obtain more information about the class settlement. Specifically, the proposed notice explains the nature of the claims and of the proposed settlement; the relief that the settlement will provide to the class; the date, time, and place of the final Settlement approval hearing; and the procedure and deadlines for submitting a claim or for submitting a request for exclusion or objection. *See,* Exhibit "B" to Settlement Agreement.

Since the notice is structured so that every class member will receive a direct mail notice and will further allow any class member to obtain additional information regarding the settlement, the proposed notice satisfies due process requirements. As such, the Court should approve the proposed notice.

## VI.  CONCLUSION

Plaintiff would respectfully request this Court certify the instant class action and appoint Plaintiff as class representative and the attorneys for Plaintiff as class counsel through entry of the proposed Preliminary Approval Order of the Class Action Settlement attached to the Class Action Settlement Agreement as Exhibit "A."

WHEREFORE, Plaintiff, Francisca D. Locicero, respectfully requests that the Court enter an order: (1) certifying the proposed Class for settlement purposes; (2) preliminarily approving the proposed Class Settlement Agreement; (3) directing notice to be sent to the Class Members via first class mail; and (4) setting dates for opt-outs, submission of claim forms, objections and a hearing under Federal Rules of Civil Procedure 23(c)(2).

/s/ Robert W. Murphy
ROBERT W. MURPHY
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
(954) 763-8660
(954) 763-8607 (FAX)
E-mail: rwmurphy@lawfirmmurphy.com

KATHLEEN P. HYLAND
*Admitted pro hac vice*
Hyland Law Firm, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 777-8536
(410) 777-8237 (FAX)
E-mail: kat@lawhyland.com
COUNSEL FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on July 22, 2019 on the following counsel for Defendants, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

**<u>VIA EMAIL:</u>**

Barry Goheen, Esq.
FISHERBROYLES, LLP
4279 Roswell Road NE
Suite 208, #351
Atlanta, Georgia 30309
Email: barry.goheen@fisherbroyles.com

Irene Oria, Esq.
FISHERBROYLES, LLP
199 E. Flagler St., #550
Miami, FL 33131
Email: irene.oria@fisherbroyles.com

*/s/ Robert W. Murphy*
Attorney