**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:17-cv-61484-DPG**

FRANCISCA D. LOCICERO, an individual,
on behalf of herself and all others similarly
situated,

                Plaintiff,                              **CLASS ACTION**

vs.

INTRUST BANK, N.A., a national banking
association, and GREENSKY, LLC, a Georgia
limited liability company,

                Defendants.
_____/

**MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiff, Francisca D. Locicero, an individual, on behalf of herself and all others similarly

situated ("Class Representative"), pursuant to Rule 23, Federal Rules of Civil Procedure, by and

through her undersigned attorneys ("Class Counsel"), hereby respectfully moves this Honorable

Court for an order granting final approval of the Class Action Settlement Agreement in this matter,

and in support thereof states as follows:

        1.        In the instant action, the Class Representative filed a Complaint against Defendants,

Intrust Bank, N. A. ("Intrust"), and Greensky, LLC ("Greensky"), for violation of state and federal

laws, including the federal Truth in Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA"), and the

Florida Credit Service Organization Act, Fla. Stat. §817.7001, *et seq.* ("CSOA"), for the failure of

Defendants to make adequate consumer financing disclosures in their written loan agreement.

        2.        After extensive settlement negotiations, the parties reached a Class Action

Settlement Agreement ("Settlement Agreement"), a copy of which has been previously filed with

the Court.

3.      On August 6, 2019, this Court entered an Order Preliminarily Approving Settlement Proposal, Conditionally Certifying the Settlement Class, Conditionally Appointing Settlement Class Counsel and Settlement Class Representative, Providing for Notice and Enjoining the Prosecution of Released Claims ("Preliminary Approval Order") [DE 90].

4.      In support of the instant application, the Class Representative has filed the following declarations:

(a)      Declaration of Keith Salhab, Case Manager, American Legal Claim Services, LLC ("Settlement Administrator Report");

(b)      Declaration of Robert W. Murphy, Esquire ("Attorney Murphy Declaration"); and

(c)      Declaration of Kathleen P. Hyland, Esquire ("Attorney Hyland Declaration").

5.      As detailed below, the Settlement Agreement is fair, reasonable, and provides substantial benefits to the Class and should be given final approval by this Court in all respects.

## MEMORANDUM OF LAW

### I. INTRODUCTION

#### A. *Procedural History*

The Complaint of the Class Representative alleges that Intrust failed to provide its customers with cost-of-credit disclosures in a form that the customer could keep prior to consummation of the credit transaction, as required by TILA, 15 U.S.C. §1638(b), and Regulation Z, 12 C.F.R. §226.17(b).  In regard to Greensky, the Class Representative alleged that GreenSky charged an undisclosed fee to arrange for the loans of class members without complying with the

CSOA, Fla. Stat.§817.7005(1), nor §817.702, which mandates a written statement be provided to the consumer detailing *inter alia* the services provided and total fees to be charged by the credit service organization before actually performing any services on the consumer's behalf.  In her Second Amended Complaint, Ms. Locicero alleged that Greensky also failed to comply with the disclosure and bonding requirements of the CSOA.

Class Counsel conducted a substantial investigation as to the factual and legal merits of the action, including plenary discovery.  After preliminary discovery, the Parties participated in two full-day mediations with JAMS, in Philadelphia, through which the broad parameters of settlement were reached.  Over the course of several weeks, the Parties negotiated the detailed final terms of the proposed Settlement Agreement now before the Court.

### B.  Terms of Settlement

Pursuant to the Settlement Agreement, the Parties have stipulated for settlement purposes only as follows:

a.      **Settlement Class.**  The Settlement Class consists of:

> All persons who obtained an extension of credit in the State of Florida from Intrust that was arranged by GreenSky represented by a contract the same or substantially similar to the Locicero Loan Agreement, between the time period from July 26, 2016 and July 25, 2017

> [Settlement Agreement -  §2.2].

b.      **Payments by Defendants.**  Defendants shall make a payment ("Settlement Fund") with the Settlement Administrator in the sum of $359,500.00, which shall be divided on a pro rata basis after the deduction of the Service Award (as defined in §11.4), the Attorney's Fee and Expense Award (as defined in §11.1), and the Settlement Administration Fee (as defined in §10). [Settlement Agreement - §9.1].

c.      **Class Representative Service Award:**   In addition to the other benefits as a Class Member, Defendants will pay the Class Representative the sum of $7,500.00 ("Service Award") from the Settlement Fund Representative for her role in this litigation, subject to Court approval. [Settlement Agreement - §11.4].

d.      **Attorneys' Fees and Costs**:   Subject to Court approval, Defendants shall pay from the Settlement Fund the reasonable attorney's fees of Class Counsel in an amount not to exceed 33⅓% of the Settlement Fund, together with litigation expenses, including, but not limited to, court costs, mediation fees and travel expenses in the amount of $15,000 ("Attorney's Fees and Expense Award") [Settlement Agreement - §11.1].

e.      **Settlement Administration:**   Through the Settlement Administration Fee paid from the Settlement Fund, American Legal Claim Services, LLC shall cause to be mailed by first-class mail: (1) the Class Notice, and (2) the Settlement Checks [Settlement Agreement - §§10, 13].

f.      **Cy Pres Award**:   To the extent that there are any funds from uncashed, expired Settlement Checks remaining in the Residual Fund (as defined in §9.2), the balance of the Residual Fund will be paid over as a *cy pres* award to Class Counsel to be distributed to the Florida Bar Foundation for use in the education and representation of consumers. [Settlement Agreement - §9].

g.      **Payment to Class Representative.**   The Class Representative shall receive an incentive payment in the sum of Seven Thousand Five Hundred Dollars ($7,500.00) for serving as Class Representative in this action.   Such payment shall be made separate and apart from the Settlement Check described above [Settlement Agreement - ¶30].

### C.  Details of Settlement Administration

Pursuant to the Preliminary Approval Order, the Court approved the proposed Notice to Class ("Class Notice") in the form of Exhibit "B" to the Settlement Agreement and directed the Settlement Administrator to mail the Class Notice by first-class mail to the Class Members at their

last known address. The Class Representative has filed the Declaration of Keith Salhab of American Legal Claim Services, LLC ("Settlement Administrator Report"), which details the Settlement Administration process.

Pursuant to the Preliminary Approval Order, notice was mailed on August 26, 2019 ("Initial Mailing") to 132 Class Members by first-class mail, postage prepaid, forwarding service requested. [Settlement Administrator Report - ¶¶ 7-8]. Two notices from the Initial Mailing were returned undelivered and re-mailed with a forwarding address or further information provided by the United States Postal Service.  As of October 30, 2019, no notices were returned as undeliverable by the U.S. Postal Service [Settlement Administrator Report - ¶¶ 9-10].

As of October 30, 2019, pursuant to the Settlement Administrator Report, the Settlement Administrator stated the following concerning its administration:

● Objections – no objections were received  [Settlement Administrator Report - ¶12].

● Exclusions – one request for exclusion was received by Claudette Bromley [Settlement Administrator Report - ¶11; Notice of Filing Request for Exclusion of Class Member Claudette Bromley – DE 93].

## II.  STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

Courts consistently favor settlement of disputed claims. *See, Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536, 541 (7th Cir. 1975), *cert. denied*, 424 U.S. 965 (1976).  Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Id.*

*See, Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980); *see also, Franks v. Kroger,* 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982) (law generally favors and encourages the settlement of class actions); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) *on reh'g, en banc, Secy of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir. 1986); *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir. 1976); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1990); *In re Dun & Bradstreet Credit Service Consumer Litigation,* 130 F.R.D. 366, 371 (S.D. Ohio 1990); *In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D.297, 312 (N.D. Ga. 1993) ("settlements of class actions are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").

In reviewing a proposed settlement, courts should neither substitute their own judgment for that of the parties who negotiated the settlement, nor "reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement." *Argo v. Harris,* 84 F.R.D. 646, 647-48 (E.D. N.Y. 1979); *see, also, Enterprise Energy, supra,* 137 F.R.D. at 246 (settlement must be viewed in its entirety and court may not modify individual terms which were the product of negotiations).

As stated by the court in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974):

> It is not necessary in order to determine whether an agreement of settlement and compromise shall be approved that the court try the case which is before it for settlement . . . Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick,* 698 F.2d 61,

74 (2d Cir. 1982). Courts have thus focused on whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability … necessary to [provide] effective representation of the Class's interests." *Id.; see, also, Stotts v. Memphis Fire Department,* 679 F.2d 541, 551 (6th Cir. 1982); *Granada Investments, Inc. v. DWG Corp.,* 823 F. Supp. 448, 454 (N.D. Ohio 1993) (citing importance of arm's length negotiations); *In re Warner Communications Securities Litigation,* 618 F. Supp. 735, 741 (S.D. N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

In deciding whether to approve the proposed settlement, this Court must determine whether the proposal is fair, adequate and reasonable. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984); *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir. 1982); *In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312. An assessment of the fairness, reasonableness and adequacy of a proposed settlement herein requires the court to weigh numerous factors. In this regard, it has been noted:

> It is well established that the court assumes a limited role when requested to approve a class action settlement proposal. While the interests of the class members must be carefully protected … the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits. Approval or disapproval is dependent upon whether, under all of the particular circumstances, the terms reached are fair, reasonable and adequate.

*See, In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D. D.C. 1974) (citations omitted).

In determining whether to approve the settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank of AL., N.A.,* 18 F.3d 1527, 1530 (11th Cir. 1994). The Eleventh Circuit has identified six factors - referred to generally as the so-called "*Bennet factors*" - to be considered in analyzing the fairness, reasonableness and adequacy of a class action settlement under Rule 23(e): (1) the existence of

fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Each relevant factor supports the conclusion that the settlement here is fundamentally fair, adequate, and reasonable.

## III.  LEGAL ARGUMENT

### A.  *Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Federal Rules of Civil Procedure, and Constitutional Due Process Requirements*

### 1.  *The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to the Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The Rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed. R. Civ. P. 23(c)(2)(B).

In the instant action, through the Preliminary Approval Order, the Court approved the form and content of the Class Notice appended to the Settlement Agreement as Exhibit "B" [DE 90]. The Class Notice informed the Class Members of the material terms of the settlement, as well as the right of the Class Members to opt out, intervene or object to the Class Action Settlement. Accordingly, it is the position of Class Counsel that the content and form of the Notice to the members of the Class satisfies the requirements of Rule 23(c)(2)(B).

### 2. The Best Notice Practicable Has Been Sent to the Members of the Class.

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974).

Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985).  As detailed in the Settlement Administrator Report, the Settlement Administrator followed its standard practice of processing the Class List through CASS, NCOA, and DPV Services to obtain the best possible addresses for the Class Members prior to mail-out [Settlement Administrator Report - ¶6].

Accordingly, "the best notice practicable" has been made by the parties. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997) ["that some class members may not have received notice evidences only that the extensive notice system was not perfect.  Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975) [in antitrust class action, notice adequate where one third of class not reached by mail].  The notice program in the instant case was outstanding: the Settlement Administrator reported a **100% delivery rate** [Settlement Administrator Report - ¶10].  This is nearly unheard of in class litigation.

### B. The Proposed Settlement is Fair, Adequate and Reasonable

### 1. Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am.,*

*Inc. v. Amoco Oil Co*., 211 F.R.D. 457, 466 (S.D. Fla. 2002); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00–14017–CIV2002 WL 1162422, at *4 (S.D. Fla. 2002) (both citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  Judicial approval of class action settlements requires a two-step process.  In the first step, the court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval.*"  H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37.  Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled, and notice is provided to the class. *Id*. The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id*. at §11.41.

In *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court for the Middle District of Florida described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law.  *Miller v. Republic National Life Insurance Company,* 559 F.2d 426 (5th Cir. 1977).  The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable.  *Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984).

> *Id*. at 1054.

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court.  *Bennett*, 737 F. 2d at 987.  In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties.  *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached.  *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983).  The courts insist that a settlement be the

result of "arm's length negotiations" effected by counsel possessed of "experience and ability . . . necessary to effective representation of the class' interests."  *Id*. 698 F.2d at 74 (citation omitted).

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1)      the likelihood of success or recovery;

(2)      the range of possible recovery;

(3)      the settlement terms and conditions, and how the terms compare with the possible range of discovery;

(4)      the complexity, expense and duration of future litigation;

(5)      the substance and amount of any opposition to the settlement;

(6)      the stage of the proceedings at which settlement is reached;

(7)      the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Application of these factors - known as the so-called "*Bennett* Factors" - shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

### 2.  *Even with a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages*

Although the Class Representative believes that the claims she has raised are meritorious, the Class Representative recognizes that ultimate success on the merits is by no means assured. During litigation the Defendants made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representative.  Defendants have also contended that they have meritorious defenses to the asserted claims [Settlement Agreement - p. 2], including

the assertion that certain class members may have signed a document acknowledging the receipt of loan disclosures.

### 3. The Factual Record Is Sufficiently Developed to Enable Plaintiff and Class Counsel To Make a Reasoned Judgment Concerning the Settlement

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig*., 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and, accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992). Here, as set forth above, at the time of the settlement, sufficient disclosure of the merits of the class claims were made to Class Counsel at the time mediation sessions were commenced. The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions. *See, Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which "to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### 4. The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representative. The proposed class settlement provides for a settlement fund of $359,000, representing 35.9 percent of the maximum monetary recovery that would have been available under TILA had plaintiff prevailed. *See* §15 U.S.C. 1640(a)(2)(B) (limiting class recovery under TILA to "the lesser of $1,000,000 or 1 per centum of the net worth of the creditor").

TILA also caps individual claims at $4,000.00 for each person.  15 U.S.C. §1640(a)(2)(A)(i).  Each Class Member who has not timely excluded himself or herself from the settlement ("Participating Class Member") will receive a Settlement Check from the Settlement Administrator for his or her *pro rata* share of the Class Fund.  Based on the Settlement Administrator Report, after payment of requested fees and costs, each Participating Class Member should receive a Settlement Check for approximately $1,586.60 each ***without the requirement of a claim form***.  This is an outstanding result by any measure.

Courts have often approved settlement providing for payments of 50% or less of the class members' damages. *Spark v. MBNA Corporation,* 157 F.Supp.2d 330 (D.Del. 2001), aff'd, 2002 WL 31059209 (3rd Cir. Sep 16, 2002); *Tenuto v. Transworld Systems, Inc.,* 1001 WL 1347235 (E.D.Pa.) (40% of maximum in FDCPA case); *In re Marine Midland Motor Vehicle Leasing Lit.,* 155 F.R.D. 416, 421 (W.D.N.Y. 1994) (41% of maximum in TILA case); *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1323-24 (2d Cir.1990). (court approved settlement of less than 10% of estimated minimum recoverable damages); *Behrens v. Wometco Enterprises. Inc.,* 118 F.R.D. 534 (S.D.Fla.1988), *aff'd,* 899 F.2d 21 (11th Cir.1990) (court approved settlement of 5.7% of total damages recoverable); *In re Anthracite Coal Antitrust Litigation,* 79 F.R.D. 707. 714 (M.D.Pa.1978), *aff'd in part vacated in part sub nom., Colonial Fuel Corp. v. Blue Coal Corp,* 612 F.2d 571 (3d Cir.1979)(court approved settlement of 28% of maximum possible recovery).

The benefits to the Class are well within the range of recovery in similar class actions under the TILA. *See, e.g., Mclaughlin v. Wells Fargo Bank,* 2017 WL 994960 (N.D. Cal. March 15, 2017) [$880,000 settlement fund for class of 341 accounts]; *Brown v. SCI Funeral Services*, in the United States District Court, Southern District of Florida, Case No. 01-cv-04370-DLG [$10 payment to each of 15,000 TILA class members]; *Kelen v. World Financial Network Nat. Bank*, 302 F.R.D. 56 (S.D N.Y. 2014) [$68,000 settlement fund for 69 class members]; *Powell v. Advanta*

*National Bank and Advanta Mortgage Corp., USA*, 2002 WL 32692911 (N.D.Ill.) [$30,900 settlement fund for 515 TILA class members]; *Klein v. Montgomery Ward, LLC, et al.*, 2001 WL 34872750 (S.D.Cal.) [$1,500,000 settlement fund, comprised of $1.1 million in cash relief and $400,000 in coupons for 27,068 TILA class members, broken into four subclasses: 9,924 class members received $113.00; 61 class members received $152.00; 41 class members received $1,124.00; 17,042 class members received $15.00]; *Sanford v. Ameriquest Mortgage Company*, 2003 WL 24219260 (D.Mass.) [$100.00 per class member for 511 TILA class members, lowered to 71 TILA class members upon final approval for a total settlement fund of $7,100.00].

### 5. *The Time and Expense of Protracted Litigation Makes Settlement Appropriate*

Settlement promotes the interests of the litigants by saving them the expense of trial of disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616 F.2d at 313; *Newman v. Stein,* 464 F.2d 689, 691-92 (2d Cir.)*, cert. denied, sub nom.; Benson v. Newman,* 409 U.S. 1039 (1972)*; Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action settlement serves interests of both litigants and public by avoiding a time-consuming trial and appeal). This position is especially compelling in light of the modest class size.

### 6. *There is No Opposition to the Proposed Settlement*

As noted above, the Settlement Class received notice of the proposed settlement by first-class mail. In response to this notice program, no objections have been raised and only one Class Member has opted-out. Based upon the unanimously favorable response to the proposed settlement, there exists no reason to delay final approval.

### 7. *Class Counsel Has Conducted Due Diligence and Has Negotiated the Settlement from a Well-Informed Perspective*

In the two years since this class action was initiated, the parties have developed substantial appreciation for the merits of their respective positions before reaching an agreement as to

settlement.  Class Counsel have conducted formal and informal discovery, including the exchange of documentation relating to numerosity and damages.

The parties attended two full-day mediation sessions with a nationally respected mediator, Ret. Magistrate Judge Diane Welsh, at JAMS in Philadelphia.  The first mediation on October 17, 2018 ended with an agreement between the parties to share data with respect to the class demographics, including information relative to identifying putative class members who were subject to a mandatory arbitration agreement.

The second mediation on April 11, 2019 resulted in a settlement.  Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks.

### 8.  *Class Counsel Believe That the Settlement is Fair, Reasonable, and in the Best Interests of Settlement Class Members*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312.  In the instant action, Class Counsel has significant experience in litigating consumer class actions. *McCalvin v. Condor HoldCo Securitization Trust*, 2018 WL 5816780 (E.D. Penn Nov. 6, 2018) [final approval of nationwide settlement class against auto lender involving over $19 million in class relief]; *Martinez v. Medicredit*, 2018 WL 2223681 (E.D. Mo. May 15, 2018) [final approval of 498,000 member settlement class under Telephone Consumer Protection Act ("TCPA")]; *Q+ Foods, LLC v. Mitsubishi Fuso Truck of America*, 2016 WL 7213278 (D. N.J. October 26, 2016) [preliminary approval of nationwide defective truck warranty class action]; *Picchi v. World Financial Bank*, 2015 WL 1201396 (S.D. Fla. March 13, 2015) [nationwide settlement of 850,000 member class under TCPA ]; *TD Bank, N.A. v. Phillips,* 189 So.2d 791 (Fla. 4th DCA 2016) [affirmance of motion to deny arbitration in UCC class action

which ultimately settled with a $1.850 million fund with 947 class members]; *Singleton v. General Revenue Corporation*, 2013WL 15118 (S.D. Fla. 2013) [nationwide settlement class of student loan borrowers with over 150,000 class members]; *Ross v. Citifinancial Auto, Ltd.*, 2014 WL 12625076 (M.D. Fla. Aug. 11, 2014) [preliminary approval of UCC class settlement]; *Martinez v. FMS Inc.*, 2008 WL 4010101 (M.D. Fla. 2008); *Brown v. SCI Funeral Services of Florida, Inc.*, 212 F.R.D. 602 (S.D. Fla. 2003); *Baez v. Wagner & Hunt, P.A.*, 442 F.Supp.2d 1273 (S.D. Fla. 2006); *Jansen v. West Palm Nissan, Inc.*, 2006 WL 1582068 (S.D. Fla. 2006); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686 (S.D. Fla. 2004); *Westlake Financial Services v. Ray*, 923 So.2d 555 (Fla. 4th DCA 2006). Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F. Supp. 1551, 1553 (M.D. Fla. 1992).[1]

"While the opinion and recommendation of experienced counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F. Supp. 1, 11 (N.D. Ohio 1982)

---

[1] The Court must also avoid judging the settlement against a hypothetical or speculative measure of what might have been achieved by the negotiators. "Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of facts and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlement." *See, Officers for Justice v. Civil Serv.Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

(opinion of counsel to be given great weight by the Court).  Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D. N.Y.1972).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conducted by counsel experienced in all aspects of class action litigation, and particularly experienced in the TILA context.  As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsel's view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class.

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation.  Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of Settlement Class members' claims against Defendants.

### *9. The Parties Negotiated the Proposed Settlement in Good Faith*

This lawsuit has been pending for over two years.  The proposed settlement was negotiated at arm's length after two mediation sessions, the final terms of which were reached by counsel after several weeks of negotiation.  Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310.

### IV.  <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiff, Francisca D. Locicero, on behalf of herself and all others similarly situated, respectfully requests that this Court approve the settlement as fair, adequate and reasonable.

*/s/ Robert W. Murphy*
ROBERT W. MURPHY, ESQ.
Florida Bar No. 717223
1212 S.E. 2nd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 763-8660
Facsimile:  (954) 763-8607
E-Mails: rphyu@aol.com;
rwmurphy@lawfirmmurphy.com
**Counsel for Plaintiff**

KATHLEEN P. HYLAND, ESQ.
*Admitted pro hac vice*
Hyland Law Firm, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
Telephone:  (410) 777-8536
Facsimile:   (410) 777-8237 (FAX)
E-Mail: kat@lawhyland.com
*Co-Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on November 11, 2019, on the following counsel for Defendants, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

**VIA EMAIL:**

Barry Goheen, Esq.
FISHERBROYLES, LLP
4279 Roswell Road NE
Suite 208, #351
Atlanta, Georgia 30309
Telephone:  (404) 793-3093
E-Mail: barry.goheen@fisherbroyles.com

Irene Oria, Esq.
FISHERBROYLES, LLP
199 E. Flagler St., #550
Miami, FL 33131
Telephone: (305) 536-2838
E-Mail: irene.oria@fisherbroyles.com

*Counsel for Defendants*

/s/ Robert W. Murphy
**Attorney for Plaintiff**